United States Court of Appeals, Fifth Circuit.

No. 92-9061.

In the Matter of WEST TEXAS MARKETING CORPORATION, Debtor.

UNITED STATES Of America, Appellant,

v.

Walter KELLOGG—Trustee, Appellee.

Jan. 31, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, JONES and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

This case makes plain the proposition that Kellogg does not have a monopoly on flakes. Indeed, it is Kellogg's opponent, the United States Government acting through the Internal Revenue Service ("IRS") which has committed two scoops of errors, allowing a case which should have been a snap, to dissolve into a series of crackles and pops. In the serial antics of this case, the government has repeatedly failed to determine the actual tax refund owed to the debtor, West Texas Marketing Corporation, and has sugar frosted the refund, overpaying by a considerable amount.

The government appears today to ask that we correct its many mistakes and alter a settlement agreement reached by the parties over two years ago. The procedural devices available for such revisions have been limited by the considerable amount of time the government allowed to elapse before it sought relief. However, because the Federal Rules of Civil Procedure do provide opportunity to revisit clerical mistakes in a judgment without time limit, we vacate the decision of the lower court and remand this case to be reviewed in light of Rule 60(a), applicable to a bankruptcy adversary proceeding by incorporation in Bankruptcy Rule 9024.

I. FACTS

Defendant Walter Kellogg, the trustee for West Texas Marketing Corporation in its Chapter 7 bankruptcy proceedings, filed an adversary proceeding against the IRS in May of 1984 seeking to recover a tax refund in excess of $5 billion. The IRS responded by asserting priority tax claims of

its own in the amount of $40,734,614.82.

In April of 1987, Kellogg submitted a letter to the government offering to settle West Texas' disputed tax liabilities. This offer was referred by the Tax Division of the Department of Justice to the Congressional Joint Committee on Taxation for review and approval. On May 5, 1988, the government agreed to the settlement and in its acceptance letter to Kellogg, notified the trustee that the IRS had been "authorized to schedule the proposed overpayment, plus interest according to law." The settlement included fifteen numbered paragraphs that detailed numerous adjustments, concessions, and disallowances agreed upon by the parties.

In July of 1988, Kellogg filed a motion with the bankruptcy court to approve the settlement, attaching copies of his offer and the government's acceptance. Kellogg's motion also contained an attachment, Exhibit A, which summarized the terms of the settlement. The first fifteen paragraphs of this attachment were identical to the paragraphs set out in the government's letter of acceptance. According to a second addendum, labeled Exhibit 1, a net refund including interest through June 30, 1988, of $12,928,955 was due to the bankrupt.[1] This addendum also stated that from June 30, 1988 until the date of payment, "interest will continue to accrue on the $12,928,955 refund owed to debtor at the rate prescribed by Section 6621(a)(1) of Title 26 of The United States Code."

On August 5, 1988, the IRS Austin Service Center issued a check in the amount of $13,581,193.34. The payment was sent on August 15 to Kellogg who then deposited the refund check. On August 18, Kellogg and the government filed a stipulation for dismissal of the adversary proceeding with the bankruptcy court, requesting that the case be dismissed with prejudice.

On August 29, the bankruptcy court entered an order approving the terms of the settlement between Kellogg and the government. The bankruptcy court's order required the parties to submit an exhibit to the court within 20 days, "which shall be incorporated as part of this order, detailing the final figures agreed upon regarding the amount of refund owing to the estate." No such exhibit was ever presented to the bankruptcy court. The order also required the parties to submit stipulations of

---

[1]This amount includes a refund for Net Operating Loss Carrybacks for the tax years 1978 and 1979 of $5,987,558 with interest in the amount of $7,547,539 after subtracting Windfall Profit Tax deficiency with accrued interest in the amount of $606,142.

dismissal; an act they had already performed the previous week.

Soon thereafter, in September of 1988, Kellogg informed the IRS that the refund may have been overpaid by an amount in the range of $600,000. It was not until February of 1989 that the Department of Justice responded to this information, sending Kellogg a series of letters detailing the overpayments and requesting the trustee to return any money erroneously received. In August of 1990 the government commenced an adversary proceeding to recover the amount overpaid on the refund. Kellogg defended by claiming that the refund had in fact been underpaid by $11,726 plus statutory interest.

It may be helpful to spell out in greater detail the series of mistakes made by the government in this case in order to evaluate the possibility of granting relief for each one. The government claims that its first mistake was overpaying interest on a net operating loss carryback. It asserts that the interest was erroneously calculated from the carryback year rather than the overpayment year as required by 26 U.S.C. § 6611(f). This resulted in the government issuing a refund check which, according to the government, exceeded the amount owed to the taxpayer by $928,326.28. It is this mistake which the government originally set out to correct when it initiated the present proceeding.

This error was compounded by a second miscalculation. Ignoring the erroneous carryback interest calculations and simply utilizing the figures employed by Kellogg in Exhibit 1 of the settlement, the total refund as of June 30, 1988 was $12,928,955. The interest accrual on that amount under 26 U.S.C. 6621(a)(1) would result in a total refund of $13,072,798.01. Because the government sent a refund check in the amount of $13,581,193.34, there was an overpayment of $508,395.33. The exact basis of the government's miscalculation in this instance is not clear from the record and on remand the lower court will have to determine how the miscalculation occurred in order to glean the exact amount owed and whether it is in fact correctable.

The government compounded these two miscalculations by failing to take prompt action to correct the mistakes, even after the trustee notified it of the possible existence of a significant overpayment. The government waited until two years had elapsed after the settlement became final before filing the present adversary proceeding to correct the multiple overpayments.

The bankruptcy court dismissed the adversary proceeding begun by the government on the grounds that the prior settlement had conclusively determined the refund owed to the trustee and the bankruptcy court therefore lacked jurisdiction to consider the complaint. On appeal, the district court ruled that there were no clearly erroneous factual findings nor reversible conclusions of law in the bankruptcy court's holding and affirmed.

The government appeals, arguing that the lower courts erred in deciding that the settlement represented a final judgment. The government contends that the settlement could not be final because it did not conclusively determine a final figure and because the agreement failed to include any arrangement as to interest. In the alternative, the government argues that even if the settlement is final the trustee's own calculations of the refund demonstrate that the check sent by the government overpaid the refund by over $500,000. We decide today that it is only this last mistake that may be amenable to correction and we vacate and remand on that basis alone.

## II. ANALYSIS

In analyzing the issues of this case, we are presented with a series of questions: (1) Was there a final judgment? (2) Did it conclusively resolve the questions in dispute in this case? (3) Can other procedural methods for reforming the judgment be identified? We will analyze these questions in turn.

## A. Final Judgment

The bankruptcy court and district court in this case assumed that the 1988 settlement agreement prevented the government from bringing the present action because a settlement agreement approved and embodied in a judgment by a court is "entitled to full res judicata effect." *United States v. Shanbaum,* 10 F.3d 305, ---- (5th Cir.1994). In *Russell v. SunAmerica Sec., Inc.,* we wrote that, "this court has long recognized that a consent judgment is a judgment on the merits, and is normally "given the finality accorded under the rules of claim preclusion.' " 962 F.2d 1169, 1173 (5th Cir.1992) (citing *Kaspar Wire Works, Inc. v. Leco Engineering and Mach. Inc.,* 575 F.2d 530, 538 (5th Cir.1978)).

The effect of applying res judicata principles to the proceeding before us is to preclude

subsequent litigation of issues which arise out of claims which were conclusively decided in the prior decision. Thus, if res judicata is found to apply, any problems or questions that a party might have with the calculations made in the earlier claim must be raised in the earlier decision or else be lost. The settlement agreement in this case will carry res judicata effects so long as the settlement satisfies the four part test we use in evaluating the applicability of res judicata.

We have articulated the requirements which must be met for res judicata to preclude a later action as follows: (1) the parties must be identical in both actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Russell,* 962 F.2d at 1172; *Shanbaum* at ----. The parties in this case are identical and the bankruptcy court had proper jurisdiction over the original adversary proceeding. The claim under consideration in both the earlier and the instant proceedings concerns the debtor's disputed tax liabilities for 1978 and 1979. Therefore, the fourth element is also satisfied because, "one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." *Shanbaum* at ---- (*quoting Finley v. United States,* 612 F.2d 166, 170 (5th Cir.1980)).

The dispute in this case centers around the third element, whether there was a final judgment. The government asserts that because there was no final dollar amount attached to the judgment, the decision should not be considered final for res judicata purposes. Therefore, it reasons, the prior settlement will not preclude this suit to recover overpayments made due to substantive mistakes in calculating the carryback and/or judgment interest.

To support its argument, the government cites the Fourth Circuit's decision in *Keith v. Aldridge* which held that " "[e]xpress agreement' between the parties that litigation of one part of a claim will not preclude a second suit on another part of the same claim is normally honored by the courts." 900 F.2d 736, 740 (4th Cir.1990), *cert. denied Keith v. Rice,* 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Because its agreement with Kellogg did not include a final amount, the government argues that the parties were reserving that issue for later resolution and are therefore

justified in raising this issue in the present litigation.

The Fifth Circuit in *Zink v. United States,* 929 F.2d 1015 (5th Cir.1991) (per curiam) held that a judgment for monetary damages is final even if it merely " "specif[ies] the means for determining, the amount' of the judgment." 929 F.2d at 1020 (quoting *United States v. F & M Schaefer Brewing Co.,* 356 U.S. 227, 233, 78 S.Ct. 674, 678, 2 L.Ed.2d 721, 726-27 (1958)). The settlement clearly provided the means by which the final amount owed by the parties could be calculated. Therefore the bankruptcy court settlement agreement was effectively a final judgment. *See Fiataruolo v. United States,* 8 F.3d 930, 946 (2nd Cir.1993) ("Finality is determined on the basis of pragmatic, not needlessly rigid pro forma, analysis.").

The government's argument is also not persuasive because both parties filed stipulations of dismissal with prejudice as a part of the settlement. The bankruptcy court incorporated the filing of these stipulations as part of the settlement agreement it approved. This is a terminal act and the government is barred from relitigating all claims which have been so dismissed. *Kaspar,* 575 F.2d at 534. In *Kaspar* we held that, "[i]t is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." *Id.* (quoting *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.,* 405 F.2d 958 (5th Cir.1968). The government signed away its rights to relitigate any of the issues arising out of the debtor's tax refund by agreeing to dismiss the previous action with prejudice. Because of these stipulations, the settlement represents a full and final disposition of the merits of these claims and, as a result, the present action was validly rejected by the bankruptcy and district courts.

We acknowledge that the bankruptcy court did not issue any order which was specifically labeled "final judgment" and that Federal Rule of Civil Procedure 58 requires that a final judgment be set forth on a separate document and be entered by a clerk of the court.[2] However, when the

---

[2]Although Rule 58 requires that the judgment be set forth on a separate document, "[i]n *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), the Supreme Court concluded that an order combining an opinion and a ruling on a motion to dismiss generally satisfied the separate document requirement of Rule 58." *InterFirst Bank Dallas, N.A. v. Federal Deposit Ins. Corp.,* 808 F.2d 1105, 1108 (5th Cir.1987); *see also Ellison v. Conoco Inc.,* 950

parties voluntarily agreed to a dismissal, under Federal Rule of Civil Procedure 41(a)(1)(ii) and under the case law of this circuit, any further actions by the court were superfluous. *See Williams v. Ezell,* 531 F.2d 1261, 1264 (5th Cir.1976) (district court lacks power to act once plaintiff files a valid Rule 41(a)(1) motion). Therefore, the dismissal order entered by the bankruptcy court is rendered irrelevant to the question of the finality of the judgment. The bankruptcy court adversary proceeding ended when the stipulations to dismiss were filed and the finality of that ending cannot be disturbed by later actions of the bankruptcy court.

Any reservation that the government may have had regarding the settlement was automatically lost when it agreed to the stipulations for dismissal. Res judicata operates to bar any claim which could have been brought in the previous action. *See Kaspar* at 535 ("the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial."). The final amount of the judgment is most certainly an issue which could have been, and in fact was, raised in the previous proceeding. The final dismissal of that claim closes off the possibility of raising that question in any subsequent proceeding, including the instant action.

We conclude that the original settlement signed by the parties and approved by the bankruptcy court carries res judicata effect and precludes relitigation of the merits of the claims decided in that agreement.

B. Scope of the Judgment

The government asserts that it adheres to the fifteen point settlement agreement. According to the government, the present action is merely directed at correcting a mistake in the government's calculation of interest on the debtor's overpayment. The issue of interest, the government argues, was not addressed in the settlement reached by the parties. Therefore, the government concludes that the settlement does not preclude the present action.

However, the parties' settlement agreement did include interest calculations. Paragraph 16 of the agreement which was appended to the bankruptcy court's order states "The Debtor and IRS

---

F.2d 1196 (5th Cir.1992) (approving of use of same document for opinion and ruling to achieve finality under Rule 58).

agree that the figures set forth on the attached exhibit 1 correctly state the amount due and owing to the Debtor after calculating the effect of the foregoing agreements and adjustments." Exhibit 1 specifically calculated the interest on the amount set forth and determined that the net refund, including interest, as of June 30, 1988 was $12,928,955. The exhibit then states that interest accrued thereafter to the debtor at the rate prescribed by 26 U.S.C. § 6621(a)(1).

In addition, as we stated above, the stipulation for dismissal was a final resolution of all issues arising out of these particular tax claims. Interest on the settlement is certainly an issue which does so arise, and was therefore conclusively resolved in the earlier proceeding. Again, a second adversary proceeding is not the proper forum for addressing any problems the government has with this judgment.

The settlement and accompanying dismissal of the dispute regarding the tax refund was a final decision on the merits and cannot be altered by an attempt to resurrect the controversy in a subsequent proceeding. Ultimately courts must come to a resolution of the issues before them and the multiple failures of the government to properly calculate the amount owed to the bankrupt's estate cannot be a justification for revisiting long settled controversies. The importance of preserving finality in judicial decision-making requires that we accord the original bankruptcy court settlement preclusive power to bar the government's action in this case. Thus, we refuse to pry once again into the substantive calculation of interest on either the carryback or the total judgement and we agree with the lower courts that the prior settlement prevents relitigation of the merits of any claims decided in that action.

C. Reformation of the Judgment

According finality to the prior bankruptcy court action in this case does not end our inquiry. The Federal Rules of Civil Procedure provide various methods for reforming judgments. Of these, one in particular, Rule 60(a), may be available to provide the government with relief from part of the overpayment. We will review the various methods of reforming judgments in order to see which is best suited to carrying out the intent of Kellogg and the government in signing the settlement agreement.

The first mistake described above, computing interest from the carryback date as opposed to the overpayment date, is the sort of substantive error which Rule 60(b) was designed to correct. Fed.R.Civ.P. 60(b) provides for relief of a party "from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b).

Rule 60(b) is not the appropriate method for reforming the settlement agreement in this case, however, because a Rule 60(b) motion, "shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). The government delayed over two years after the original settlement agreement became final before petitioning in the present adversary proceeding for relief. It can therefore make no argument in favor of granting relief from the judgment under Rule 60(b) because any such motion is time barred.[3]

However, the power of a court to reform a judgment under Rule 60(a) is not limited by the one year constraint of Rule 60(b). Rule 60(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected

---

[3]Although coram nobis is not an action available after the enactment of Rule 60(b), we note that Congress provided that the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding." Fed.R.Civ.P. 60(b). Rule 60(b) thus preserves the rights of parties to bring independent actions in equity to reform judgments.

> For these independent actions, "[t]here is no time limit on when [they] may be brought." *Narramore v. United States,* 852 F.2d 485, 492-93 (9th Cir.1988) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2868 at 241 (1973)); *see also West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.,* 213 F.2d 702 (5th Cir.1954) (granting relief on a judgment using the court's independent action powers nine years after the entry of the original judgment). Delay in filing does not necessarily bar an independent action in equity.

> This circuit, in *Bankers Mortgage Co. v. United States,* 423 F.2d 73 (5th Cir.1970), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970), set out the elements of the independent action:

>> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

> 423 F.2d at 79, (quoting *National Surety Co. v. State Bank,* 120 F. 593, 599 (8th Cir.1903)). We reference the independent action for the sake of comprehensiveness.

by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Fed.R.Civ.P. 60(a). The lower court in this case failed to consider Rule 60(a) as a possible avenue for correcting the government's mistaken overpayment of interest and we remand for a consideration of the applicability of this rule to the situation of this case.[4]

Although the reach of Rule 60(a) has been notably narrowed, it may be available to provide relief in the present case. In *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 668-69 (5th Cir.1986) (en banc) *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986) we addressed the restrictions which have been placed on this rule:

> The scope of Rule 60(a) is, as we have noted, very limited. In *Dura-Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.,* [694 F.2d 112, 114 (5th Cir.1982) ], the court set out these limits:
>
> > Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature ... [Citations omitted]
>
> Thus it is proper to use Rule 60(a) to correct a damages award that is incorrect because it is based on an erroneous mathematical computation, whether the error is made by the jury or by the court.... Correction of an error of "substantive judgment," therefore, is outside the reach of Rule 60(a).

A mistake correctable under Rule 60(a) need not be committed by the clerk or the court and Rule 60(a) is even available to correct mistakes by the parties. *Warner v. Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir.1976) (mistakes correctable by Rule 60(a) are "not necessarily made by the clerk"); *Pattiz v. Schwartz,* 386 F.2d 300, 303 (8th Cir.1968) (mistakes by parties correctable by Rule 60(a)).

The exact cause of the second mistake, miscalculating statutory interest on the final refund, cannot be discerned from the record as presented to this court. While the government has miscalculated the exact amount of interest, the district court must evaluate the available evidence to discern what caused the mistake and ensure that it is the sort of clerical or mathematical error which

---

[4]A correction under Rule 60(a) can be raised *sua sponte* by a court in order to correct an erroneous judgment. Fed.R.Civ.P. 60(a). *See also In re Timely Secretarial Service, Inc.,* 987 F.2d 1167, 1171 (5th Cir.1993) (court must notify the parties if it chooses to make a *sua sponte* motion to correct under Rule 60).

is susceptible of reformation.

We have addressed at various times the scope of errors correctable under Rule 60(a) and review them today to aid the lower courts in applying the precedents to the facts of this case. The rule allows courts to modify their judgment in order to insure that the record reflects the actual intentions of the court and the parties. The court's responsibility in this case is to correct "errors, created by mistake, oversight, or omission, that cause the record or judgment to fail to reflect what was intended at the time of trial." *Warner,* 526 F.2d at 1212; *see also Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1445 (9th Cir.1990) ("[a] district court judge may properly invoke Rule 60(a) to make a judgment reflect the actual intentions and necessary implications of the court's decision.").

Although the relevant case law does not provide a bright line rule as to when Rule 60(a) can be applied, we hope a review will nevertheless present a more coherent picture of the area. We begin the evaluation by looking at our decision in *Warner.* In that case this court refused to treat a miscalculation in the amount of interest as correctable under Rule 60(a). 526 F.2d at 1212. The court was faced with a situation in which the district court entered a 67 interest rate on a judgment, overlooking an increase to 87 in the applicable interest rate enacted by the Mississippi legislature. We held that this was an error of law, rather than a typographical error, which was not correctable by Rule 60(a). *Id.*

Other opinions have limited Rule 60(a) because the change sought under rule 60(a) was substantive in nature. The decision in *In re Galiardi* prevented a lower court from using Rule 60(a) to amend a transfer order by specifying the reason for the order. 745 F.2d 335, 336 (5th Cir.1984) (per curiam). The court held that this was a change in the substance of the judgment and thus Rule 60(a) was not appropriate. *Id.* In *Trahan v. First National Bank of Ruston,* 720 F.2d 832 (5th Cir.1983), we faced a case in which a district court directed the defendant to pay an additional amount to compensate the plaintiff for a depreciation in the value of the stock awarded to him. The depreciation occurred due to delay caused by an appeal filed by the defendant. We ruled that this was a correction of the substantive nature of the judgment and could not be effected by Rule 60(a). *Id.* at 834. Likewise, in *Britt v. Whitmire,* 956 F.2d 509 (5th Cir.1992) we decided that a motion to

amend and broaden a previous summary judgment order to dismiss all instead of part of the plaintiff's claims could not be a Rule 60(a) motion because the change was substantive in that it was not at all clear that the district court intended summary judgment on all the claims.

By contrast, in *In re American Precision Vibrator Co.,* 863 F.2d 428 (5th Cir.1989) we held that where the clerk had failed to timely docket one party's opposition to a motion to dismiss, the court could rectify the resulting erroneous order dismissing the case under Rule 60(a). In another case, *Chavez v. Balesh,* 704 F.2d 774 (5th Cir.1983), we held that a the trial court properly utilized rule 60(a) to correct a failure to include liquidated damages in a judgment despite the court's clear intention to do so as expressed in the findings of fact.

In sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed. If, on the other hand, cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the government's blunders. Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

We therefore vacate the decision of the lower court s and remand for consideration of the preceding issues. If the government can show that the check sent to Kellogg does not reflect the intentions of the parties, and that relief will be in the form of correcting a computational mistake, then the district court has a responsibility to make the appropriate adjustments.[5] Our review of the case shows that the substantive rights of the parties do not seem to be in dispute since these rights were

---

[5]The district judge will also have to determine until what day the calculation of interest on the judgment should have been made. The government has submitted two interest amounts. The court will have to decide whether the interest is computed from the time of the issuance of the check or from the day ten days later when the check was actually sent.

determined through the settlement and the fifteen point agreement appended thereto. Additionally, Kellogg himself has recognized the existence of this mathematical mistake. Thus, correction of the exact amount paid looks to be a matter of altering the payment to reflect the amount actually owed by the government. However, the burden of making this determination falls to the lower court in looking at the specific nature of the mistake made in the settlement of this case.

III. CONCLUSION

The bankruptcy court was correct when it refused to hear the government's attempt to relitigate issues already decided in the previous settlement judgement. However, the court should have considered the possible applicability of Rule 60(a) to the present proceedings in light of any possible clerical errors made by the parties. VACATED AND REMANDED.