**REVISED - June 12, 2000**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-11310

_____

In The Matter of Gibraltar Resources, Inc.,

Debtor

_____

SCOTT UNDERWOOD ADAM, ET AL.,

Plaintiffs-Appellants,

VERSUS

ITECH OIL COMPANY; FRANK APP, JR.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____
May 10, 2000

Before POLITZ, GARWOOD, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

In this case we must decide whether the Plaintiffs are barred by a settlement that was approved by the bankruptcy court. We conclude that Plaintiffs' failure to appeal the order approving the settlement precludes this action. We therefore affirm the dismissal of Plaintiffs' damage action.

I.

The instant case arises from post-petition complications involving an interest in an oil well ("Hannusch Well" or "Well"). In early January 1993, Gibraltar Resources, Inc., ("Gibraltar" or "Debtor") acquired a 75% working interest in the Hannusch Well.

The mineral lease contained a provision that permitted the landowners to terminate the lease if production ceased for more than 60 days. Gibraltar, in an unrecorded transaction, agreed to sell interests in the Well to Scott Underwood Adam, et al., (collectively "Plaintiffs") pursuant to a joint venture agreement. Under the terms of the joint venture, Gibraltar served as the manager/general partner and held the power to enter into contracts, operate the Well, and supervise its drilling. Gibraltar contracted, with Itech Oil Co. ("Itech") and its President Frank App, Jr. ("App"), for Itech to serve as the operator of the Well.

In October 1993, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Gibraltar. On the date of the petition, Gibraltar held record title to the working interest in the Well. Plaintiffs filed proofs of claim as creditors in the bankruptcy case, asserting a general unsecured claim for the amount of each Plaintiffs' investment in the Well; alternatively Plaintiffs asserted that each of them owned a working interest in the Well based on the joint venture agreement. A letter confirming the Trustee's intent to allow the claims as general unsecured claims in the properly documented "investment" amount was sent to Plaintiffs' original counsel. In November 1995, the bankruptcy court entered an order adjudicating Plaintiffs as general unsecured creditors.

In August 1994, Itech ceased producing the Hannusch Well.

2

Itech represented to the Trustee and to Plaintiffs, however, that the lease was not in danger of termination, because the landowners had agreed not to enforce the termination provision for non production. Despite Itech's representations, U.S.A. Group, Inc. ("KCCON") entered into a new lease with the landowners and recorded affidavits of non-production to terminate the existing lease under which the Trustee and the Plaintiffs owned their interests. KCCON then assigned its 100% working interest under the new lease to Itech. In April 1995, the Trustee learned that the Well was in fact producing and that Itech was acting as the 100% owner.

Itech filed suit ("Itech Adversary") against the Trustee, seeking a determination that the Trustee owed Itech money for operating costs and expenses and that Itech had legitimately taken over 100% of the working interests in the Well. The Trustee counterclaimed against Itech, based on the termination of the lease, for breach of contract, fraud, negligence, and constructive fraud. The Plaintiffs were not named parties in the Itech Adversary. However, it is undisputed that the Plaintiffs had full knowledge of the suit and did not intervene.

After the suit had been pending for approximately one year the parties to the Itech Adversary reached a settlement which was approved by the bankruptcy court. The terms of the settlement provided for the Trustee to receive, on behalf of the estate: cash totaling $132,000, a reduction of secured claims against the estate

3

in excess of $584,650, and a 58.5% working interest in the Well. At the settlement approval hearing Plaintiffs, for the first time, actively asserted a demand for their working interests in the Well. Although Plaintiffs objected to the settlement at the hearing, they did not appeal the bankruptcy court's order approving the settlement.

After the settlement, the bankruptcy court authorized the Trustee to sell the 58.5% working interest at public auction; it was sold on November 13, 1996 for $60,000. Plaintiffs appealed the sale but the appeal became moot because Plaintiffs obtained no stay of the sale order.

Following the bankruptcy court's approval of the settlement and the sale of the Hannusch Well lease, the Plaintiffs initiated an adversary proceeding against Itech, App, and the Trustee ("Hannusch Well Adversary") predicated on essentially the same tort theory as the Trustee's action in the Itech Adversary. In the Hannusch Well Adversary, the Plaintiffs asserted *inter alia* that: (1) they owned working interests in the Well that the Trustee acquired under the settlement; and (2) Itech and App were liable to Plaintiffs for damages arising from the fraudulent termination of the Hannusch lease and Itech's acquisition of the Well from KCCON.

Plaintiffs' theory of the case in the Hannusch Well adversary was that the parties had agreed to transfer ownership of the Well to the joint venture and that Plaintiffs had purchased working

4

interests in the Well. The bankruptcy court accepted Plaintiffs' theory and concluded that the parties had intended to transfer record title to the interest in the Well to the joint venture and simply had not done so before the Chapter 7 petition was filed.

However, the bankruptcy court denied relief to Plaintiffs on grounds that they had released their claims against Itech and App through the settlement.[1] The Plaintiffs appealed the bankruptcy court's judgment denying them relief against Itech and App in the Hannusch Well Adversary. The district court affirmed the bankruptcy court, holding that, because the Plaintiffs were beneficiaries of the estate represented by the Trustee, they are bound by the settlement.[2] In their appeal to this Court, Plaintiffs argue that the Trustee's settlement cannot bind them because: (1) Plaintiffs based their claims on causes of action that were not property of the estate; and (2) Plaintiffs were not parties to the settlement.

---

[1] Following the bankruptcy court's judgment, Plaintiffs filed a motion to make additional findings of fact. The bankruptcy court granted the motion and held that with regard to Plaintiffs' claims for fraud and conspiracy against Itech and App, that Itech and App had made fraudulent misrepresentations and entered into a conspiracy, causing the Plaintiffs to suffer damages of $61,369.00.

[2] For reasons best known by the district court, it held on the one hand that the settlement of the Itech Adversary was binding on Plaintiffs, but distributed the proceeds of the sale of the Well based on Plaintiffs' share in their ownership of the Well. Neither the bankruptcy court nor district court explains this contradiction and no explanation occurs to us. In any event, neither party complains of the district court's distribution order in this appeal.

A bankruptcy court approves compromises and settlements pursuant to Bankruptcy Rule 9019, which provides that "on motion by the trustee and after a hearing on notice ... the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019. A bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a "final" order. See In re Cajun Electric Power Coop., Inc., 119 F.3d 349, 354 (5th Cir. 1997); In re West Texas Marketing Corp., 12 F.3d 497, 501 (5th Cir. 1994); In re Medomak Canning, 922 F.2d 895, 900 (1st Cir. 1990). A bankruptcy court's final orders are appealable as of right under 28 U.S.C. § 158. A settlement agreement approved and embodied in a judgment by a court is "entitled to full res judicata effect." West Texas Marketing, 12 F.3d at 500. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Medomak, 922 F.2d at 900 (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)).

At the hearing to approve the settlement, Plaintiffs' counsel asked the bankruptcy court to enter a judgment denying approval of the settlement. Counsel's reasons for objecting to the settlement included: (1) Plaintiffs owned individual working interests in the Well; and (2) Trustee, by entering into the settlement, was

disposing of property that was not property of the estate. Trustee countered that Plaintiffs had failed to provide any evidence that they were anything other than general unsecured creditors. Plaintiffs produced no evidence at the hearing to establish their working interests and the bankruptcy court approved the settlement over their objection. Although Plaintiffs objected to the settlement and had standing to appeal the adverse ruling, under 28 U.S.C. § 158(c), they did not appeal the order approving the settlement.

We conclude that because Plaintiffs failed to appeal the bankruptcy court's order approving the Itech Adversary settlement, that settlement is binding on Plaintiffs and precludes their action filed in the Hannusch Well Adversary. Plaintiffs' theory of their case in the Hannusch Well Adversary was that Plaintiffs were working interest owners in the Well rather than general unsecured creditors of Debtor's estate. Plaintiffs argued that, for this reason, the Trustee's actions in the Itech Adversary could not bind them. However, Plaintiffs failed to appeal the bankruptcy court's order, approving the Itech Adversary settlement, premised on the fact that Plaintiffs were creditors of the estate and not working interest owners. The bankruptcy court's unappealed order approving the settlement became binding on Plaintiffs and they are not entitled to relitigate the issue resolved in that order.

III.

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.