

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2006

# In Re: Diet Drugs

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4204

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Diet Drugs " (2006). *2006 Decisions.* Paper 601.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/601

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-4204

_____

IN RE:  DIET DRUGS (PHENTERMINE,
FENFLURAMINE, DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Elliot Palay,
Appellant

_____

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(MDL No. 1203)
District Judge:  Honorable Harvey Bartle, III

_____

Argued May 19, 2006

BEFORE:  McKEE and STAPLETON, Circuit Judges,
and McCLURE*, District Judge.

(Filed August 9, 2006)

_____

Susan B. Palay (Argued)
2458 Unicornio Street
Carlsbad, CA  92009
 Attorney for Appellant

_____

* Honorable James F. McClure, Jr., United States District Judge for the Middle District of
Pennsylvania, sitting by designation.

Andrew A. Chirls (Argued)
Christopher L. Soriano
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street - 22nd Floor
Philadelphia, PA  19103
  Attorneys for Appellee, AHP Settlement Trust

Robert D. Rosenbaum
Arnold & Porter
555 12th Street, N.W.
Washington, DC 20004

Peter L. Zimroth
Arnold & Porter
399 Park Avenue
New York, NY 10022-4690
  Attorneys for Appellee, Wyeth Corporation

Arnold Levin
Michael D. Fishbein
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
 Attorneys for Appellees, Plaintiffs' Management Committee and Class Counsel

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

Elliot Palay ("Palay"), a claimant in the Multidistrict Diet Drugs Litigation, MDL-

1203, appeals an order of the District Court denying Palay's motion to compel the AHP

Settlement Trust to audit Palay's claim and to declare Palay's age to have been 49 when he was first diagnosed with a reduced left ventricular ejection fraction. For the reasons that follow, we will affirm the District Court's order.

I

We have previously set forth the facts of the diet drugs litigation. *See, e.g., In re Briscoe*, 448 F.3d 201, 206 (3d Cir. 2006) (recounting facts of litigation and citing prior cases). The primary risk from diet drug use for present purposes is valvular heart disease ("VHD"). A symptom of VHD is regurgitation of blood through diseased heart valves. This regurgitation can be detected through echocardiograms.

Pursuant to the Settlement Agreement, the AHP Settlement Trust (the "Trust") was established to administer the benefits to the settlement class. Members of the settlement class may claim varying levels of benefits depending upon the severity of their injuries and other factors. For claimants who have certain documented medical conditions, including that they have demonstrated levels of valvular regurgitation (and are thereby considered "FDA positive"), the Settlement Agreement provides for a system of matrix benefits. Settlement Agreement at § IV.B.2. There are two matrices: the "A" matrix and the "B" matrix. The "A" matrix provides for generally higher benefits. FDA positive claimants are generally eligible for benefits under Matrix A, so long as they do not meet the specified qualifications for Matrix B. *Id.* at § IV.B.2.d.1.

For claimants who claim benefits based on damage to their mitral valve, one of the

3

conditions that moves such claimants from Matrix A to Matrix B is "acute myocardial infarction associated with acute mitral regurgitation."[1] *Id.* at § IV.B.2.d.(2)(c)(ii)(c). If claimants suffer from that condition and are unable to establish that the regurgitation existed prior to the myocardial infarction, they are given benefits according to Matrix B, and not under the more generous Matrix A.

Within the two matrices, benefits are determined according to two factors: 1) the severity of the disease; and 2) "the age at which the Diet Drug Recipient is first diagnosed as suffering from that level of disease severity." *Id.* at § IV.B.2.b. The severity of the disease determines one's "Level" in the matrix (the matrix row). Benefits increase with the level of severity. One's age at first diagnosis of the particular level of severity determines the age bracket used to calculate benefits (the matrix column). At a given severity, benefits diminish the later in life one is diagnosed with the particular severity of disease.

A claimant qualifies for Matrix Level III if, *inter alia,* the claimant's "left sided valvular heart disease requir[es] surgery." *Id.* at IV.B.2.c.(3). A claimant qualifies for Matrix Level IV if*, inter alia*, the claimant has "[s]ignificant damage to the heart muscle, defined as . . . (b) a left ventricular ejection fraction < 40% six months after valvular repair or replacement surgery in patients who have had such surgery." *Id.* at IV.B.2.c.(4)(c)(iv).

---

[1]"Acute myocardial infarction" is commonly known as a heart attack.

4

Palay was prescribed Redux, one of the diet drugs at issue, in July 1996. In November 1998, when Palay was 49 years old, Palay suffered acute myocardial infarction. He was admitted to the hospital on November 9, 1998. An echocardiogram performed the following day showed moderate mitral regurgitation and a left ventricular ejection fraction of 25-35 percent. A test revealed severe three-vessel coronary artery disease and Palay received coronary bypass surgery. An echocardiogram performed the following day showed roughly similar levels of mitral regurgitation.

Palay filed a claim with the Trust in January 2000. The Trust initially determined Palay to be payable on Matrix B at Level III. Further, because Palay was 49 at the time he was diagnosed as requiring surgery, he was to be paid according to the 45-49 age bracket.

Palay received a new echocardiogram in January 2001, when Palay was 52 years old. This echocardiogram, taken more than two years after his surgery, established that Palay had the required degree of reduced left ventricular ejection fraction six months after his surgery making Palay eligible for Level IV benefits.

As a primary component of his claim, Palay submitted a "Green Form." One of the questions on the form asked whether Palay had "mitral regurgitation associated with myocardial infarction." Palay's doctor answered this question "yes," but added a handwritten note stating, "Murmur appeared in setting of acute [myocardial infarction]. Relationship to [myocardial infarction] not known [with] certainty." App. at 67.

On March 2, 2001, the Trust issued a final determination providing for benefits to Palay under Matrix B at Level IV. The Trust determined that the affirmative answer given by Palay's doctor, despite the handwritten addition, established that the myocardial infarction predated his moderate mitral valve regurgitation, and that that regurgitation was not established until after the myocardial infarction.

Palay submitted additional correspondence and a supplemental Green Form. The supplemental Green Form was attested to by a different doctor than the first form and differed from the original Green Form by stating that Palay did *not* have myocardial infarction associated with mitral valve regurgitation. The Trust ultimately concluded that the supplemental form and other materials did not change its conclusion that Palay's benefits should be awarded according to Matrix B and not Matrix A. Palay appealed to the arbitration panel.

On October 21, 2002, the Arbitrator affirmed the Trust's determination. The Arbitrator found that the Trust's determination that Palay had not established that his moderate mitral valve regurgitation pre-dated his myocardial infarction was not clearly erroneous in light of the conflicting Green Forms and ambiguous correspondence from Palay's doctor.

Palay appealed the Arbitrator's decision to the District Court. On November 26, 2002, while the appeal was pending, the District Court issued Pretrial Order ("PTO") No. 2662, in which it ordered that "the [Trust] shall audit every claim for matrix level benefits

6

from Fund B that has not as of the date of this order been paid." App. at 25. As of the date of PTO No. 2662, Palay's claim had not yet been paid.

On February 6, 2003, in response to a letter from Palay, counsel for the Trust wrote in a letter that:

> [T]he Trust intends to submit Mr. Palay's claim through the medical audit process that is imposed on the Trust pursuant to [PTO No.] 2662. . . . Once the rules and procedures governing these audits are in place, the Trust intends to apply the audits first to claims that were the subject of determinations before [PTO No.] 2662 was entered. Mr. Palay's claim is in that category.

App. at 56.

On October 31, 2003, Palay submitted a new Green Form to support a supplemental claim for Level V, Matrix A benefits. The details of this claim are sketchy from the record on appeal, but according to the District Court, the Trust audited the supplemental claim in May 2004. In July 2004, the Trust notified Palay that he was not entitled to any additional benefits under this claim and issued a final determination denying additional benefits on October 27, 2004. Palay appealed this determination to the District Court, which, as required by the Settlement Agreement, issued a show cause order in May 2005. As of the date of this opinion, the District Court has not yet resolved Palay's supplemental claim.[2]

On February 4, 2004, the District Court, in PTO No. 3336, affirmed the arbitrator's

---

[2] Palay's present appeal does not encompass his supplemental claim and we express no view as to its merits or to its permissible scope.

decision on Palay's original claim. The order states:

> [I]t is hereby ORDERED that the Award of the Arbitrator . . . is AFFIRMED and that [Palay] is entitled to Matrix B, Level IV benefits and not to Matrix A benefits. After a review of the record, we conclude that the findings of the AHP Settlement Trust and the arbitrator were not clearly erroneous and that there was no error of law.

App. at 42.

Around the time of the District Court's decision in PTO No. 3336, the Trust mailed Palay a series of letters that Palay now argues misled him into believing that his claim was being audited by the Trust. Many of these letters make reference to Court Approved Procedure No. 4 ("CAP No. 4"). *See* App. at 52 (letter of Jan. 27, 2004); *id.* at 51 (letter of Feb. 18, 2004); *id.* at 49 (letter of Feb. 25, 2004). Palay argues that CAP No. 4 is only relevant to claims in audit. In addition, a letter dated March 31, 2004 specifically states that "[t]he claim is out to audit." App. at 46. It is unclear from the record on appeal whether these letters refer to Palay's original claim or to the supplemental claim.

In June 2004, the Trust issued a new Final Determination Letter to Palay on his original claim. The Trust's letter indicated that Palay's award would be roughly $2,400 less than had previously been represented to Palay. Rather than awarding Palay benefits based on Matrix B, Level IV and the 45-49 age bracket, the award would be based on the 50-54 age bracket. The Trust explained that it had erred:

> To qualify for a Level IV benefit, you must show that you have a reduced left ventricular ejection fraction. Your earlier determination was based on

8

your surgery, qualifying you for a Level III benefit. On the date of your surgery, November 11, 1998, you were in the 45-49 age bracket on the B Matrix. However, you were not diagnosed with a reduced left ventricular ejection fraction until your echocardiogram taken on January 18, 2001, when you were 52 years of age. Although this reduced left ventricular ejection fraction increases your payment from Level III to Level IV, your payment must be reduced to account for the fact that you were 52 years of age on the date of your diagnosis.

App. at 43.

On June 25, 2004, Palay filed a variety of motions with the District Court relating both to his original claim and the supplemental claim. Among these motions were a "motion to compel the Trust to produce the audit completed on or before January 27, 2004," and a motion "to compel the Trust to audit this Claim under PTO No. 2662 . . . [and] to declare claimant's age as 49 when diagnosis of reduced left ventricular ejection fraction was first made." App. at 3.

In PTO No. 5575, issued on August 16, 2005, the District Court denied these motions. With respect to the audit purportedly completed prior to January 27, 2004, Palay relied on the above-cited letters to argue that the Trust conducted an audit of his claim and determined that it was payable on Matrix A. The District Court determined that the letters were not proof that an audit had actually taken place and denied the motion. Palay does not appeal this issue, but makes reference to having been misled into believing that an audit had taken place.

With respect to the motion to compel the Trust to audit Palay's claim under PTO No. 2662, the District Court ruled as follows:

9

Claimant contends that his original claim should be audited pursuant to PTO No. 2662. As noted above, Palay appealed the Report and Award of the Arbitrator finding that he was entitled to Matrix B, Level IV benefits. In PTO No. 3336, we affirmed the arbitrator's award and found that Palay "is entitled to Matrix B, Level IV benefits and not to Matrix A benefits." Claimant did not appeal this decision. Under the Settlement Agreement, "if an appeal from the report and award of the Arbitrator is taken, the decision of the Court shall be final and binding." Thus, Palay's claim is closed and he is not entitled to an audit pursuant to PTO No. 2662.

App. at 16-17.

The District Court also denied Palay's motion to declare his age as 49 at first diagnosis of reduced left ventricular ejection fraction. The District Court noted that the Trust had originally awarded benefits according to the Matrix B, Level IV, and 45-49 age bracket, and that this award had been affirmed by an Arbitrator and by the District Court in PTO No. 3336. However, the District Court explained that under the Settlement Agreement, "[t]o qualify for Level IV benefits, Palay needed to provide a diagnosis of reduced left ventricular fraction six months after valve surgery." App. at 17. The District Court agreed with the Trust that 52 is the correct age of diagnosis because Palay was 52 when he received the only echocardiogram taken at least six months after his surgery. Accordingly, it denied Palay's motion to declare Palay's age as 49 when diagnosis of reduced left ventricular ejection fraction was first made. In a footnote, the District Court stated:

In PTO No. 3336, we affirmed an arbitrator[']s decision that claimant should be paid Matrix B, Level IV benefits based on his age at 49. The Trust, however, modified its original determination after PTO No. 3336 was issued and paid the benefit based on his age at 52. Even though [t]he Trust

10

was correct, it should have applied to the court to make this correction rather than acting unilaterally.

*Id.* at 18 n.5.

## II

Palay challenges the above-described post-judgment order, PTO No. 5575, issued by the District Court. The order finally resolved the particular claims at issue and, even though post-judgment proceedings are ongoing in the District Court, we may treat the challenged order as final and exercise appellate jurisdiction under 28 U.S.C. § 1291. *See Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676, 678 (3d Cir. 1986) (noting that requirement of finality should be given a practical construction when post-judgment orders are involved).

We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000). "[T]o find an abuse of discretion the District Court's decision must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001)).

## A

Palay first argues that he is entitled to an audit of his original claim pursuant to the plain language of PTO No. 2662. PTO No. 2662 ordered the Trust to conduct audits on

all claims from Fund B that had not yet been paid as of the date of the order. Palay's claim had not yet been paid as of the date of the order. Therefore, Palay argues, he is entitled to an audit under PTO No. 2662 and the District Court erred in denying Palay's motion to compel the Trust to conduct such an audit.

The plain language of PTO No. 2662 suggests that Palay's claim should have been audited at the time of PTO No. 2662's issuance. But when Palay presented this argument to the District Court in his motion to compel, Palay was effectively asking the District Court to order an audit on a claim that had been finally concluded. Palay filed his motion to compel the Trust to conduct an audit several months after the District Court affirmed the Arbitrator's decision affirming the Trust's determination that Palay was payable according to Matrix B, and not Matrix A. Under the terms of the Settlement Agreement, "if an appeal from the report and award of the Arbitrator is taken, the decision of the Court shall be final and binding . . . ." Settlement Agreement at § VI.C.4.l. In addition, the rules governing audits provide that "any final decision by the Trial Court on a Claim in Audit shall close that Claim, with prejudice, as to any condition that has been claimed or could have been claimed as of the date of the Attesting Physician's signature on Part II of the Green Form." App. at 38. Under the audit rules, any audit the District Court ordered would have been immediately closed because the District Court had already issued a final decision on the claim. Accordingly, the District Court could not have erred when it declined to order an audit for a claim that had already been finally determined

12

through the arbitration and appeal process.

Palay argues that he was misled by the Trust's letters suggesting an audit was imminent or ongoing. But many of the Trust's letters that Palay points to were written after the District Court's decision in PTO No. 3336, in which the District Court affirmed the results of the arbitration. Even assuming that these letters refer to Palay's original claim and not his supplemental claim, it was unreasonable for Palay, without filing an appeal to protect his rights, to rely on these letters in the face of the Settlement Agreement's clear provision that orders of the District Court affirming arbitration awards are final and binding.

Palay argues that the Settlement Agreement precludes appeals of final orders of the District Court affirming arbitration awards. But the fact that the Settlement Agreement provides that such orders of the District Court are "final and binding" does not mean that appellate review of those orders in the Court of Appeals is precluded. Settlement Agreement at § VI.C.4.l. Indeed, our jurisdiction is typically contingent on orders of the District Court being "final." *See* 28 U.S.C. § 1291.

B

Next Palay argues that the District Court erred when it approved the Trust's unilateral decision to modify the terms of Palay's benefits after Palay's award had been affirmed, first in arbitration, and then by the District Court in PTO No. 3336. Palay

13

points out the inconsistency between that ruling and the District Court's treatment of PTO No. 3336 as conclusively closing Palay's claim for purposes of resolving whether Palay was entitled to an audit under PTO No. 2662. The Trust argues that the issue was not properly before the District Court in the first place and that even were it, the District Court merely exercised its authority under Fed. R. Civ. P. 60(a) to correct clerical errors in prior judgments.

At the outset, it is clear that Palay should properly have been awarded Matrix B, Level IV benefits based on the 50-54 age bracket. Palay qualifies for Level IV benefits only because he has "[s]ignificant damage to the heart muscle, defined as . . . a left ventricular ejection fraction < 40% *six months after valvular repair or replacement surgery* in patients who have had such surgery." Settlement Agreement at § IV.B.2.c.(4)(c)(iv) (emphasis added). In other words, the condition that allows Palay to claim Level IV benefits is that *six months after his surgery* he continued to suffer from a left ventricular ejection fraction of less than 40 percent. The age at which Palay was "first diagnosed as suffering from that level of disease severity" was 52. *Id.* at § IV.B.2.b. Indeed, Palay concedes that six months after his surgery he was 50 years old. *See* Rep. Br. Appellant at 19. It is factually impossible for Palay to have been 49 and suffering from any condition at all six months after his surgery because he turned 50 within six weeks of his surgery.[3]

---

[3]The Trust argues that because the District Court's "finding of fact" regarding Palay's age at first diagnosis was not clearly erroneous, we must affirm. However, the question

14

The Trust argues that Palay's exclusive remedy to challenge the Trust's revised final determination was through arbitration. The Settlement Agreement provides that claimants may appeal final determinations made by the Trust by filing a Notice of Appeal to Arbitration with the District Court within fifteen days of receiving notice of the determination. Settlement Agreement at § VI.C.4.h. In addition, the Settlement Agreement provides that "[i]f there is no appeal initiating an Arbitration process, then the decision of the Trustees and/or Claims Administrator(s) with respect to the gross amount to be paid . . . shall be final." *Id.* at § VI.C.4.j. Accordingly, the Trust argues that by filing the motion with the District Court, Palay violated the Settlement Agreement. Further, because the time has now lapsed to file such an appeal, the Trust argues that Palay has waived the argument.

Palay responds that he was barred from further arbitration because the rules governing arbitration, approved by the District Court in PTO No. 2153, provide that "[a]ll appeals related to a single Class member . . . shall be consolidated into a single Arbitration proceeding and assigned to a single Arbitrator." Rule 7, Rules Governing Arbitration Process, PTO No. 2153 (Sept. 12, 2001). Palay implicitly argues that because he had already been through one round of arbitration his only recourse was to the District Court.

The District Court did not address the question of whether Palay's motion was

of whether the Trust and the District Court were legally empowered to modify the terms of the prior final judgment is a separate legal question subject to plenary review.

15

properly before it and addressed it on its merits.[4]  Indeed, the District Court suggested that if any party was at fault for failing to follow proper procedure, it was the Trust for unilaterally modifying Palay's award after the District Court had issued PTO No. 3336. We defer to the District Court's decision to address the claim on its merits.  The Settlement Agreement does not appear to contemplate the unusual circumstance presented here, wherein the Trust, following a full round of litigation, unilaterally issued a second "final" determination reducing a claimant's benefits under an outstanding District Court order.  It is unduly formalistic to require Palay to undertake a second round of arbitration when all he seeks is for the Trust to abide by the District Court's previous order affirming the outcome of the first round of arbitration.

The Trust argues in the alternative that the District Court properly exercised its authority to correct clerical errors under Rule 60(a).  That rule provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the

---

[4]Wyeth, which filed a response to Palay's motion below, but does not appear on appeal, argued in a footnote to its brief below that

> a motion before the Court is not procedurally appropriate to dispute a Final Determination of the Trust.  The Settlement Agreement provides that a claimant may appeal a Final Determination of the Trust within fifteen days of receiving notice of the determination by filing a Notice of Appeal with the Trial Court. . . .  The appeal of the age of diagnosis issue has expired and Mr. Palay cannot raise it now to the Court.

Wyeth's Response to Palay's Motion to Compel, at 6 n.1 (July 13, 2004).  The Trust stated in its brief below that it "substantially agrees with Wyeth's response," but in its own discussion of the age of diagnosis issue did not reference any procedural inadequacy of Palay's motion.  AHP Settlement Trust's Resp. Palay's Mot. Compel at 1, 3 (July 15, 2004).

court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Fed. R. Civ. P. 60(a). Wright, Miller and Kane explain that

> [s]ubdivision (a) deals solely with the correction of errors that properly may be described as clerical or arising from oversight or omission. . . . When the change sought is substantive in nature, such as a change in the calculation of interest not originally intended, the addition of an amount to a judgment to compensate for depreciation in stock awarded, or the broadening of a summary judgment motion to dismiss all claims, relief is not appropriate under Rule 60(a). Thus a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.

11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2854 at 240-41 (footnotes omitted).[5]

Our court has similarly stated that Rule 60(a) "is limited to the correction of 'clerical mistakes'; it encompasses only errors 'mechanical in nature, apparent on the record, and not involving an error of substantive judgment.'" *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129-30 (3d Cir. 2005) (quoting *Mack Trucks, Inc. v. Int'l Union, UAW*, 856 F.2d 579, 594 n.16 (3d Cir. 1988)); *see also United States v. Stuart*, 392 F.2d 60, 62 (3d Cir. 1968). We have approvingly quoted the Fifth Circuit's articulation of the test for Rule 60(a)'s permissible application:

_____

[5]Rule 60(b), by contrast, is broader in scope and allows district courts to relieve a party from a judgment on motion and upon such terms as are just for reasons of mistake, inadvertence, surprise, excusable neglect, and other reasons, including "any other reason justifying relief from the operation of the judgment." The Trust does not argue that the District Court operated under the authority of Rule 60(b), perhaps because it is undisputed that the Trust never moved the Court for such relief and the Rule explicitly requires a motion to be made within one year of the order.

> [T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed. If, on the other hand, cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage [a party's] blunders. Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

*Pfizer*, 422 F.3d at 130 (quoting *In re W. Tex. Mktg.*, 12 F.3d 497, 504-05 (5th Cir. 1994)).

The Trust argues that "the $2,400 correction in benefit payments was a mechanical error that is obviously apparent from the fact that Palay was 52 at the time of the 2001 echocardiogram. No substantive judgment is at issue." Br. Appellee at 23. Palay counters that the claims administrator made a substantive judgment when it calculated Palay's age to be 49 at the time of first diagnosis and that this goes beyond the type of "clerical error" Rule 60(a) is designed to address. He argues that the Claims Administrator determined that the "condition" relevant for purposes of calculating the age at diagnosis under the Matrix calculation is a reduced left ventricular ejection fraction of less than 40 percent. Under his argument, the Claims Administrator determined that Palay suffered from this "condition" at age 49, as demonstrated by the first two echocardiograms. Moreover, he argues that this determination was implicitly affirmed by

18

both the Arbitrator and the District Court. As noted previously, this argument is wrong on the underlying merits because it overlooks the fact that for purposes of qualifying for Level IV benefits, a claimant must have suffered from the reduced left ventricular ejection fraction *six months after surgery*. Palay was 50 years old six months after his surgery and was first diagnosed as continuing to suffer the reduced left ejection fraction six months after surgery when he was 52 years old.

However, Rule 60(a) does not authorize the District Court to correct any and all wrongly decided substantive issues after the fact. The correction here goes beyond the correction of a "mindless and mechanistic mistake." *In re W. Tex. Mtkg.*, 12 F.3d at 505. In its analysis, the District Court was required to review the details of the Settlement Agreement, interpret the Agreement, and apply it to facts of Palay's case that had not been at issue in the prior proceeding. The District Court's analysis entailed both "cerebration" and "planetary excursions into facts." *Id.* Accordingly, we reject the Trust's argument that the District Court properly exercised its authority under Rule 60(a) to correct clerical errors in prior judgments.

On the other hand, the District Court did not purport to exercise authority under Rule 60(a) or even to modify the prior judgment at all. Rather, all the District Court did was deny Palay's motion "to declare [Palay's] age as 49 when diagnosis of reduced left ventricular ejection fraction was first made." Claimant's Mot. Compel at 1 (June 25, 2004). In his prayer for relief, Palay asked the Court to "[c]ompel the Trust to determine

19

that Mr. Palay was 49 years of age at the time of diagnosis of a markedly reduced left ventricular ejection." *Id.* at 4. And finally, in the proposed order he submitted with his motion, Palay asked the Court to enter an order reading, "The Court compel[s] the Trust to determine that Mr. Palay was 49 years of age at the time of diagnosis of a markedly reduced left ventricular ejection." Proposed Order at 2, Claimant's Mot. Compel.

Even had the District Court granted Palay exactly what he asked for, a declaration that Palay was age 49 at the time of diagnosis of a reduced left ventricular ejection, that would not have necessarily impacted Palay's award. It is true enough that Palay was 49 years old at the time of such a diagnosis. However, as discussed, the mere diagnosis of a reduced left ventricular ejection fraction of less than 40 percent at age 49 does not qualify one for inclusion in the age 45-49 Matrix age bracket. One must be diagnosed with that condition *six months after surgery* and at age 49.

Had Palay asked, Palay may well have been entitled to an order compelling the Trust to abide by the District Court's judgment in PTO No. 3336, in which the District Court affirmed the Trust's and Arbitrator's determination that Palay was entitled to receive benefits under Matrix B, Level IV, and the 45-49 age bracket. The Settlement Agreement explicitly provides that

> if an appeal from the report and award of the Arbitrator is taken, the decision of the Court shall be final and binding with respect to: (a) the Gross amount to be paid on account of a Claim for Matrix Compensation Benefits unless there is a documented change in the physical condition of the Diet Drug Recipient after the submission of the claim which justifies consideration for a greater level of Matrix Compensation Benefits.

20

Settlement Agreement at § VI.C.4.l. Palay came closest to requesting this relief when, in the body of his motion, he "request[ed] the Court to order the Trust to readjust the Gross Matrix Compensation to reflect the diagnosis of Mr. Palay's reduced left ventricular ejection fraction at the correct age of 49 years." Claimant's Mot. Compel at 12. However, as stated above, a diagnosis of reduced left ventricular ejection fraction at 49 years does not translate into a readjustment of the Gross Matrix Compensation.

Thus, the Trust seems to have violated the Settlement Agreement when it unilaterally modified Palay's award after the District Court had issued a final binding affirmance of Palay's original award. As the District Court explicitly noted, the Trust should have moved the District Court, perhaps under Fed. R. Civ. P. 60(b), to correct the District Court's prior judgment. On the other hand, the District Court did not err when it denied Palay the relief he requested. The District Court denied Palay's entreaty to enter an order that was legally irrelevant. We cannot say that this was abuse of discretion. Accordingly, we will affirm the District Court's order.