In re BENNETT FUNDING GROUP, INC. SECURITIES LITIGATION.

Richard C. Breeden, Trustee of the Bennett Funding Group, Inc., et al., Plaintiffs,

v.

Sphere Drake Insurance, PLC, et al., Defendants.

Nos. MDL 1153 JES, 01 CIV 1246 JES.

United States District Court, S.D. New York.

Dec. 3, 2001.

Simpson, Thacher & Bartlett, New York City, Conrad K. Harper, John D. Roesser, Of Counsel, for Plaintiffs.

Paul Weiss, Rifkind, Wharton & Garrison, New York City, Steven B. Rosenfeld, Thomas M. Keane, Pari E. Berk, Of Counsel, for Sphere Drake.

Costigan & Company, P.C., New York City, William F. Costigan, Christopher C. Loeber, Stephanie D. Drawdy, Of Counsel, for Ades Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Richard C. Breeden, trustee in bankruptcy ("the trustee" or "plaintiff") for the Bennett Funding Group, Inc. and its related companies (collectively "BFG"), brings the above-captioned action against reinsurer Sphere Drake Insurance, PLC ("Sphere Drake") and others, including certain "John Doe" defendants known as the "Ades defendants" consisting of individual investors claiming rights to the proceeds of the Sphere Drake reinsurance policy ("the Policy"). The trustee and Sphere Drake now make a joint motion for summary judgment seeking a declaration that the Ades defendants are not entitled to the proceeds of the Policy which Sphere Drake issued to Capital Insurance Co. ("Capital"), a captive Bennett company incorporated in Bermuda. For the reasons set forth below, the Court grants the joint motion in part, dismissing the Ades defendants' cross-claim against Sphere Drake with prejudice and dismissing the Ades defendants' counterclaim without prejudice to being renewed in an appropriate bankruptcy court proceeding.

## I. BACKGROUND

In the Fall of 1994, Capital Insurance (a.k.a. Bennett Insurance Company Ltd.) issued a master insurance policy ("the Master Policy") to Aloha Leasing, another BFG entity. *See* Declaration of Jeremy Creelan dated July 9, 2001 ("Creelan Decl.") at Exhibit ("Exh.") 1.A. The Master Policy provided Aloha Leasing, and the other Bennett companies that would later be named as Loss Payees, insurance coverage in the event that BFG defaulted on lease payments to its investors. On October 1, 1994, Sphere Drake executed the Policy reinsuring Capital in case of such a default. *See* Creelan Decl. at Exh. 1.B., Sphere Drake Reinsurance Cover Note ("the Reinsurance Cover Note"). The reinsurance contract between Sphere Drake and Capital consists of what the parties refer to as the "Reinsurance Cover Note," that in turn incorporates by reference all of the "terms, clauses and conditions" of the Master Policy. *See* Creelan Decl. at Exh. 1.B. The express terms of both of these insurance contracts named the Bennett Insurance Company Ltd.—*i.e.*, Capital—as the reassured and BFG, as the parent of Aloha Leasing and the other BFG companies named as Loss Payees, as the assured/Loss Payee. Both the Master Policy and the Reinsurance Cover Note, which incorporates the terms of the Master Policy by reference, are also clear that all payments under the insurance/reinsurance policy would be made to the Loss Payee only. For instance, the Master Policy states that Capital:

[A]grees to pay on behalf of Bennett to Loss Payee through a claims paying agent under any Contract Obligations insured hereunder upon a joint Default of payment by Bennett to the Loss Payee and by any deficiency and/or shortfall between monies received from equipment lease contracts and monies due to Investors who have entered into financial transactions with Bennett up to but not exceeding the Limit of Liability under this Policy.

Creelan Decl., Exh. 1.A. at 1.[1] Moreover, the Policy conditions the payment of claims upon presentation of both a Declaration and a Certificate of Insurance naming the presenting party as the Loss Payee.[2] Finally—and most crucially for the

---

1. The Ades defendants emphasize that the Claims Paying Agent Agreement ("the Claims Agreement") executed by Sphere Drake entitles them to payment of the policy proceeds and provides them with a right to sue Sphere Drake directly. That agreement, entered into between Sphere Drake and BFG, provides in relevant part:

 Upon receipt of an Acceptance of Claims, the Insurer [Capital] shall remit the proceeds of the claim directly to the Agent. The Agent shall have the right to file a claim with the Reinsurer [Sphere Drake] in the event of non-payment of a claim by the Insurer. The agent shall then remit the proceeds directly to the Loss Payee.

 Creelan Decl., Exh. 1.E. at 2, ¶ 5. However, for the reasons discussed more fully below, the Court finds that the Claims Agreement affords the Ades defendants neither a contractual right to the Policy proceeds nor a direct right of action against Sphere Drake.

2. The Declaration/Certificate requirement can be found in the Master Policy, which, as noted above, is incorporated by reference into the Policy. Specifically, the Master Policy states:

 The sum Bennett [*i.e.*, Capital] shall be obligated to pay as specified in the Declaration attached to this Policy and secured by equipment lease contracts in the form of the specimen on file with The Company or in the form of any specimen which is subsequently agreed by The Company and added by endorsement entered into and/or acquired on or prior to the effective date shown in Declaration and Certificate ....
 ....
 All Loss Payees shall be listed on the Declarations attached to this Policy and on the Certificates of Insurance issued by The Company under this Policy.

 Creelan Decl., Exh. 1.A. at 2, 8.

purposes of the instant motion—it is undisputed that none of the 377 Ades defendants either had a Declaration or was named anywhere as a Loss Payee.

Based upon these facts and contractual provisions, the trustee and Sphere Drake now jointly move for an order: (1) granting a Declaratory Judgment stating that the Ades defendants are not entitled to the policy proceeds; (2) dismissing with prejudice the Ades defendants' counterclaim against the trustee; and (3) dismissing with prejudice the Ades defendants' cross-claim against Sphere Drake. The Ades defendants oppose this joint motion by arguing that Loss Payee status is immaterial to their right to recover policy proceeds.[3] Specifically, they argue that as investors who purchased the securities involved in this action, they are entitled to payment either because of their supposed "beneficial interest" in policy proceeds or because the trustee, as the successor in interest to the Loss Payees, could only hold such funds in a constructive trust running in favor of the Ades defendants.

## II. DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. See ·Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. It is well-established that a fact is material when its resolution would "affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505; see also Celotex, 477 U.S. at 322–24, 106 S.Ct. 2548. Moreover, in a contract dispute governed by New York law—such as we have here [4]—summary

---

3. The Ades defendants also move to strike Sphere Drake's answer to the Ades defendants' cross-claim because of Sphere Drake's alleged noncompliance with the bond posting requirements of N.Y. C.P.L.R. § 1213(c). However, as indicated on the record during oral argument on the instant motions, the Court finds that § 1213(c) does not apply in this case. In particular, the Court holds that the Ades defendants lack standing to invoke the security requirements of § 1213(c) because they are not—as they must be to demand that provision's protections—"insureds or beneficiaries" of the Policy. See, e.g., Republic Ins. Co. v. Atlantica Ins. Co., Ltd., No. 91 Civ. 8362, 1994 WL 163705 at *2 (S.D.N.Y. Apr.28, 1994). As an alternative holding made for the benefit of appellate review, the Court finds that, even if the Ades defendants had standing to invoke § 1213(c), the Court would exercise its discretion under that provision to allow Sphere Drake to belatedly post a bond—in an amount to be determined at a later hearing, if necessary—instead of imposing the drastic measure of striking Sphere Drake's answer to the cross-claim.

4. The trustee and Sphere Drake base their motion for summary judgment, and the Ades defendants base their opposition to such motion, on the law of the State of New York. However, Sphere Drake consents to applying New York law only for the purposes of this motion and attempts to reserve its right to argue later in the case that Bermuda law

judgment may be granted only where the language of the agreement is unambiguous, *see Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993), which is a question for the court. *See K. Bell & Associates, Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990).

With respect to the instant motion, the Court finds that the Ades defendants do not have standing under the Policy to pursue their contract claims against Sphere Drake or the trustee. In this case, the only question before the Court is whether or not any of the Ades defendants are Loss Payees under the Policy; and because this fact is undisputed—that is, none of these 377 investors claim to be Loss Payees under the Policy—the Court is compelled to dismiss their contract claims against both Sphere Drake and the trustee.

■ Indeed, as the plain, unambiguous language of the contract indicates: (1) payment under the Policy can only be made to a Loss Payee; and (2) all Loss Payees must be named in a Declaration and Certificate of Insurance.[5] *See supra* Part I & note 2. None of the documents relevant to

this contract dispute—namely, the Master Policy, the Reinsurance Cover Note, the Claims Agreement, or the Declarations and Certificates of Insurance—support any claim that any of the proceeds be paid to investors. Therefore, the Ades defendants reliance on extrinsic evidence in support of the contention that they are "beneficiaries" of the Policy entitled to maintain direct suit against the trustee and Sphere Drake is misplaced. The Court may not consider such extrinsic evidence when faced with an unambiguous contract. *See, e.g., County of Suffolk v. Alcorn,* 266 F.3d 131, 137–38 (2d Cir.2001).

The investors also rely upon a document prepared by BFG entitled "Insurance Overview" as evidence that the investors were third-party beneficiaries under the Policy. *See* Declaration of William F. Costigan dated August 22, 2001, Exh. E. Contained in that document is a summary of the payment chain in the event that Sphere Drake's obligations are triggered. *See id.* at Attachment 1. This summary indicates that the Loss Payee, after receiving payment under the Policy, would "inturn [sic], forward payment to the [investor]." *Id.* This document is legally irrelevant to this motion because the Policy,

should apply instead. Indeed, the Claims Agreement, unlike the Policy and the Master Policy, expressly states that it is governed by the law of Bermuda. Of course, the parties are free to consent to—and indeed already have consented to—the application of New York law. *See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 (2d Cir.1991). Yet, even if such consent were absent, the Court finds that the law of the forum state—*i.e.,* New York—would still apply because none of the parties have proven foreign law through the submission of affidavits, statutory authority, case authority, sworn testimony or other similar evidence. *See Vishipco Line v. Chase Manhattan Bank. N.A.,* 660 F.2d 854, 860 (2d Cir.1981); *Kleartex (U.S.A.), Inc. v. Kleartex SDN BHD,* No. 91 Civ. 4739, 1994 WL 733688 at *7 n. 5

(S.D.N.Y. June 9, 1994) (Preska, J.); *Curtis v. Beatrice Foods Co.,* 481 F. Supp. 1275, 1285 (S.D.N.Y.1980) (Pollack, J.).

**5.** The Ades defendants contend that their failure to present Declarations and Certificates of Insurance naming themselves as Loss Payees does not preclude their recovery of Policy proceeds because presentation of such documents was not a condition precedent to payment but was instead simply a part of the internal paper flow of BFG. This argument clearly contradicts the plain language of the Policy; but even if it did not, the Ades defendants still cannot overcome the requirement that they must nevertheless be Loss Payees—whether named in a Declaration or not—to recover any money under the Policy.

and even the Claims Agreement the Ades defendants say is so helpful to their case, is clear and unambiguous that Sphere Drake's contractual obligation is to remit payment only to the Loss Payee through its claims paying agent.

With respect to the Claims Agreement, the Court also rejects the argument that this separately executed document confers on the Ades defendants a direct right of action against Sphere Drake. This agreement does not, as the Ades defendants contend, create in investors a contractual right to the policy proceeds; it merely sets forth the administrative procedure that the parties will follow should Sphere Drake have to honor its reinsurance obligations. Moreover, and as already noted, the Claims Agreement unambiguously states that payments made under it flow to the Loss Payee through Triangle, the Bermuda company acting as claims paying agent. *See* Creelan Decl., Exh. 1.E at 2, ¶ 5; *supra* note 2. Thus, like the other contractual terms regarding payment by Sphere Drake, the Claims Agreement is clear that proceeds will be remitted only to Loss Payees. Accordingly, the Ades defendants have no standing to sue either Sphere Drake or the trustee pursuant to the terms of the Claims Agreement.

 In any event, the Ades defendants still cannot maintain suit against Sphere Drake under the theory that Sphere Drake is a direct insurer. First, the cases cited in support of this argument provide only that the insured can bring suit directly against a reinsurer in circumstances where there is a so-called "cut through" arrangement giving the insured certain rights against the putative reinsurer. *See, e.g., Mercantile & General Rein-*

*surance Co., plc. v. Colonial Assurance Co.,* 184 A.D.2d 177, 591 N.Y.S.2d 1015, 1017 (1st Dep't 1992), *rev'd on other grounds,* 82 N.Y.2d 248, 604 N.Y.S.2d 492, 624 N.E.2d 629 (1993). The Ades defendants, however, are not insureds; the assured parties under the Policy are, rather, the Loss Payees. Second, even assuming *arguendo,* that the Ades defendants were insured parties, a "cut through" provision must appear in the Policy itself to bestow an independent right of action on the insured. *See id.* The Policy contains no such provision nor is the Claims Agreement incorporated by reference into the Policy. Rather, the Claims Agreement is a separate and independent contract.[6] It follows that the Claims Agreement cannot create in the Ades defendant a right of action under the Policy.

 Finally, and most importantly, the Court finds that the Ades defendants have no direct cause of action against Sphere Drake because they have not addressed or in any way contradicted evidence showing that BFG and Sphere Drake actually considered and rejected the inclusion of a "cut through" provision in the Policy. *See* Memorandum of Law in Opposition to Motion to Strike dated August 20, 2001 at 12. For all of these reasons, the Court finds as a matter of law that the Ades defendants have no right of action against Sphere Drake. It follows that the cross-claim against Sphere Drake shall be and is hereby dismissed with prejudice.

The Ades defendants suit against the trustee also must be dismissed because of their lack of standing under the Policy. As already discussed, only Loss Payees

---

6. Indeed, aside from the absence of a provision in the Policy incorporating the Claims Agreement, the Claims Agreement itself announces its independence by stating that it is made "in consideration of the mutual covenants contained [therein]." Creelan Decl., Exh. 1.E. at 1.

may pursue a contractual claim for Policy proceeds. Thus, ·even if it is true, as the Ades defendants contend,[7] that BFG always viewed the investors as the ultimate beneficiaries of the insurance and reinsurance arrangements, such investors nevertheless cannot bring an action to recover the proceeds of the Policy. Only the trustee, the party currently representing the BFG companies that acted as Loss Payees, can pursue a contract action for Policy proceeds. Of course, should the trustee successfully recover such money, the Ades defendants, as unsecured creditors of the estate, could then bring suit against the trustee under their various non-contractual or quasi-contractual causes of action.[8] Such claims would of course raise issues of creditor priority and therefore must be addressed by the Bankruptcy Court. It follows, therefore, that the Ades defendants counterclaim against the trustee is dismissed without prejudice to being renewed in an appropriate Bankruptcy Court proceeding.

## III. CONCLUSION

For the foregoing reasons, the Court hereby dismisses the Ades defendants cross-claim against Sphere Drake with prejudice and dismisses the Ades defendants counterclaim against the trustee without prejudice to being renewed in an appropriate Bankruptcy Court proceeding.

It is **SO ORDERED**

7. In particular, the Ades defendants point to various items of extrinsic evidence supposedly demonstrating their status as beneficiaries of the Policy, including the statement of the trustee in another adversary proceeding wherein the trustee referred to investors as third-party beneficiaries. *See* Ades Investors' Memorandum of Law in Opposition to Summary Judgment dated August 23, 2001 at 9–10.

8. Such causes of action might include, for instance, the Ades defendants quasi-contractual claim that any funds the trustee collects as the representative of the Loss Payees would be subject to a constructive trust running in favor of the investors.