MINER, Circuit Judge.
 

 Appellants Ades-Berg Investors appeal from a judgment entered in the United States District Court for the Northern District of New York (Scullin,
 
 C.J.),
 
 dis
 
 *157
 
 missing as untimely an appeal from an Order of the United States Bankruptcy Court for the Northern District of New York (Gerling,
 
 C.J.),
 
 authorizing a Bankruptcy Trustee to enter into a settlement agreement. The District Court found that the Bankruptcy Court’s Order was a final order that, upon entry, triggered the ten-day period in which to file a notice of appeal.
 

 BACKGROUND
 

 The principal business of the Bennett Funding Group, Inc. and its related companies (collectively “BFG”) consisted of originating and assigning equipment lease contracts to investors, including appellants Ades-Berg Investors (“Ades-Berg”).
 
 [1]
 
 On March 29, 1996, the United States Securities and Exchange Commission filed suit against BFG, asserting that BFG was being operated as a Ponzi Scheme.
 
 [2]
 
 On that same date, BFG filed voluntary Chapter 11 bankruptcy petitions, pursuant to 11 U.S.C. § 1101 et seq. These bankruptcy proceedings were venued in the United States Bankruptcy Court for the Northern District of New York (“Bankruptcy Court”).
 
 See
 
 28 U.S.C. § 1408.
 

 On February 24, 1997, appellee Richard C. Breeden, the Chapter 11 Trustee for BFG, (the “Trustee”) brought an adversary complaint against Sphere Drake Insurance, PLC (“Sphere Drake”) in the Bankruptcy Court. This adversary proceeding was subsequently transferred to the United States District Court for the Northern District of New York (“Northern District Court”). Sphere Drake had insured BFG against shortfalls in its lease collections. The Trustee’s complaint sought recovery of proceeds due under the policy and a declaration that the Trustee was the sole and rightful recipient of any policy proceeds. Also named as defendants in this case were certain “John Doe” defendants, including Ades-Berg, consisting of individual investors claiming rights to the proceeds of the Sphere Drake reinsurance policy.
 
 See Breeden v. Ades Investor Group (In re The Bennett Funding Group, Inc.),
 
 60 Fed.Appx. 863, 864 (2d Cir.2003). Ades-Berg counterclaimed against the Trustee, seeking the imposition of a constructive trust over policy proceeds, and cross-claimed against Sphere Drake, alleging a contract cause of action. On January 25, 2001, the Northern District Court (Kahn, /.) approved and adopted the Bankruptcy Court’s recommendation to withdraw the reference of the adversary proceeding in order to allow the adversary proceeding to be adjudicated with an ongoing consolidated class action (the “Consolidated Class Action”) that BFG investors had instituted against Sphere Drake in the United States District Court for the Southern District of New York (“Southern District Court”).
 

 On December 3, 2001, the Southern District Court dismissed Ades-Berg’s cross-claim against Sphere Drake for lack of standing and dismissed Ades-Berg’s counterclaim against the Trustee without prejudice and subject to renewal in the Bankruptcy Court.
 
 See Breeden v. Sphere Drake Insurance, PLC (In re The Bennett Funding Group, Inc. Securities Litiga
 
 
 *158
 

 tion),
 
 270 B.R. 126, 127 (S.D.N.Y.2001),
 
 aff'd,
 
 60 Fed.Appx. 863 (2d Cir.2003). On February 26, 2002, the same court severed the Trustee’s declaratory judgment action and transferred it to the Northern District Court, leaving the Trustee’s claim for recovery of proceeds against Sphere Drake as the only portion of the adversary proceeding remaining in the Southern District Court. On July 30, 2002, the Northern District Court (Kahn,
 
 J.)
 
 referred the transferred portion of the adversary proceeding, the Trustee’s declaratory action, to the Bankruptcy Court, which reopened and reinstated it on August 12, 2002.
 

 The Trustee, Sphere Drake, and other interested parties and classes involved in a variety of cases in various courts reached a settlement which included the adversary proceeding. The settlement took on its final form in December 2002 as a Stipulation and Agreement of Settlement (“Agreement”). The Agreement stated that the “[Agreement], and the obligations of the Settling Defendants thereunder, are expressly conditioned upon the prior occurrence of’ several specified events. One such event was that “[a]n order approving this [Agreement] and authorizing the Trustee to consummate it, substantially in the form annexed hereto as Exhibit J[,] shall have been entered by the Bankruptcy Court.” “Exhibit J” to the Agreement was a proposed “Final Order and Judgment Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and to Rules 7054(B) and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement and Compromise of Trustee’s Claims Against the Settling Defendants.” Another event on which the Agreement was conditioned was the entry of a judgment in the Southern District Court approving the Agreement.
 

 On March 13, 2003, the Trustee filed a motion in Bankruptcy Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking an order authorizing him to consummate the Agreement. This motion explained, in relevant part, that “[b]ecause the [Agreement] resolves claims pending before [the Bankruptcy Court] and the [Southern District Court], it is contingent upon approval by both courts. Accordingly, counsel for.the Settlement Class is simultaneously seeking approval of the [Agreement] in the [Southern District Court].” On March 26, 2003, Ades-Berg timely objected to the 9019 motion.
 

 On May 22, 2003, the Bankruptcy Court issued its Memorandum Decision, Findings of Fact, Conclusions of Law, and Order relating to the Trustee’s 9019 motion (the “9019 Order”). The Bankruptcy Court, though noting Ades-Berg’s objection, concluded that the Agreement was “fair and reasonable and in the best interests of the Debtors’ Estates” and authorized the Trustee to consummate the Agreement.
 

 On June 5, 2003, Ades-Berg appeared, as members of the settling class, in the Southern District Court to oppose the Agreement. The Southern District Court approved the Agreement by a “Final Order and Judgment,” entered June 12, 2003, which terminated the class action lawsuit and remanded to the Bankruptcy Court for the distribution of settlement proceeds.
 

 On June 17, 2003, Ades-Berg moved the Bankruptcy Court to alter or amend the 9019 Order pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure (adopting Fed.R.Civ.P. 59, permitting motions to alter or amend a judgment within ten days after entry of the judgment), or, alternatively, to provide relief from the 9019 Order, pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (adopting Fed.R.Civ.P. 60, permitting relief from judgments or orders for specified reasons). On June 23, 2003, pursuant to
 
 *159
 
 Rule 8002(c) of the Federal Rules of Bankruptcy Procedure (permitting motion to extend time to file a notice of appeal, but if motion filed untimely, requiring “excusable neglect”), Ades-Berg moved the Bankruptcy Court for an extension of time to file a notice of appeal from the 9019 Order and filed a notice of appeal from that Order. On July 10, 2003, the Clerk of the Bankruptcy Court issued a certificate of non-compliance to Ades-Berg, noting that its notice of appeal from the 9019 Order was untimely under Rule 8002. On February 9, 2004, the Bankruptcy Court determined that the 9019 motion arose as “a discrete matter within the larger bankruptcy case.” The court determined that its 9019 Order
 

 adjudicated a discrete matter within the main case [and therefore] it was a final and appealable order[,] notwithstanding the lack of a statement [of-finality] pursuant to Fed. R. Bankr.P. 7054 [adopting Fed.R.Civ.P. 54(a)—(c) ]. Accordingly, the ten-day period for filing an appeal under Fed. R. Bankr.P. 8002 began, to run on May 22, 2003 and expired on June 2, 2003.
 

 The court subsequently found that Ades-Berg’s Rule 9023 motion was untimely, that Ades-Berg had failed ■ to show any ground for relief on its Rule 9024 motion, and that Ades-Berg’s Rule 8002 motion for extension of time to file a notice of appeal was untimely and that its neglect in filing the motion late was not excusable.-
 

 On March 16, 2004, the Northern District Court ordered Ades-Berg to show cause why its appeal from the 9019 Order should not be dismissed as untimely. In response Ades-Berg argued that its Notice of Appeal was timely because the 9019 Order was not a final order. Specifically, Ades-Berg argued that the 9019 Order was not final on May 22, 2003, because: (i) the 9019 Order did not - conform to the proposed Final Order and Judgment that was attached to the Agreement; and (ii) the Agreement upon which it was based was contingent upon the Southern District Court’s entry of a final judgment approving the Agreement. On January 31, 2005, the Northern District Court (Scullin,
 
 C.J.)
 
 ruled that the 9019 Order constituted a final order and, therefore, that Ades-Berg’s appeal was untimely. A judgment to that effect was entered February 2, 2005.
 

 Ades-Berg timely filed the instant appeal from the Northern District Court’s judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 158(d)(1) because the Northern District Court’s judgment is a final judgement.
 
 See In re AroChem Corp.,
 
 176 F.3d 610, 618 (2d Cir.1999) (discussing this Court’s jurisdiction over orders and judgments issued by the district courts acting in their bankruptcy appellate capacity).
 

 DISCUSSION
 

 I.
 
 Finality of Bankruptcy Court Orders
 

 ■ This case requires us to determine if the 9019 Order was a “final order.” If the 9019 Order was a “final order,” Ades-Berg’s appeal from that Order was untimely and this Court must affirm the judgment of the Northern District Court. If the • 9019 Order was not a “final order,” however, the appeal was not untimely, and the judgment of .the Northern District Court must be vacated.
 

 To appeal from an order of a bankruptcy court to a district court, a party must file a notice of appeal within the time prescribed by Federal Rule of Bankruptcy Procedure 8002. Fed. R. Bankr.P. 8001(a). Generally, Rule 8002 requires that a party file a notice of appeal within ten days of the “date of the entry of the judgment, order, or decree appealed from.” Fed. R. Bankr.P. 8002(a). For
 
 *160
 
 appeals “of right” a district court only has jurisdiction to hear appeals from “final judgments, orders, and decrees.” 28 U.S.C. § 158(a)(1).
 

 The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation. The need for different standards arises from the fact that a bankruptcy proceeding is umbrella litigation often covering numerous actions that are related only by the debtor’s status as a litigant and that often involve decisions that will be unre-viewable if appellate jurisdiction exists only at the conclusion of the bankruptcy proceeding. We have thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of
 
 discrete disputes within the larger case.”
 

 Sonnax Industries, Inc., v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),
 
 907 F.2d 1280, 1283 (2d Cir.1990) (emphasis in original; internal quotation marks and citations omitted).
 

 By “disputes” we do not mean merely competing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. § 1291. Given the strong federal policy against piecemeal appeals, a “dispute,” for ap-pealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted.
 

 Shimer v. Fugazy (In re Fugazy Exp., Inc.),
 
 982 F.2d 769, 775-76 (2d Cir.1992) (internal citations omitted). “Under
 
 Son-nax,
 
 our determination of the finality-of the district court’s order depends on whether appellants will have another chance to assert their objections to the [sjettlement [ajgreement.”
 
 SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),
 
 960 F.2d 285, 290 (2d Cir.1992). “A bankruptcy court’s approval of a settlement order,” pursuant to' Fed. R. Bankr.P. 9019, “that brings to an end litigation between parties is a final order.”
 
 Adam v. Itech Oil Co. (In re Gibralter Resources, Inc.),
 
 210 F.3d 573, 576 (5th Cir.2000).
 

 In this case, the Bankruptcy Court approval of the Agreement, pursuant to Fed. R. Bankr.P.. 9019, would typically constitute a “final order.” The 9019 Order, on its face; conclusively resolved the claims of the settlement class against the. settling defendants: “Under the terms of the Agreement, the Trustee and the Settlement Class [ ] agreed to release the claims they have been prosecuting against the Settling Defendants in the [Southern District Court] in exchange for a payment by the Settling Defendants of $27,500,000 plus accrued interest from October 6, 2000.”
 
 Breeden v. Sphere Drake Insurance, PLC (In re The Bennett Funding Group, Inc.),
 
 No. 96-61376 (Bankr.N.D.N.Y., May 22, 2003) at 2-3. Thus, the 9019 Order would finally dispose of a “discrete dispute”: it would conclusively resolve the adversary action by establishing the settlement amount and extinguishing claims.
 
 See Gibraltar Resources,
 
 210 F.3d at 576.
 

 Ades-Berg, however, asserts on appeal to this Court, as they did in the District Court, two arguments as to why, in this case, the Bankruptcy Court’s 9019 Order did not constitute a final order: (i) the 9019 Order did not conform to the proposed Final Order and Judgment that was attached to the Agreement; and (ii) the Agreement upon which it 'was based was contingent upon the Southern District Court’s entry of a final judgment approving the Agreement. As in the District Court, these arguments are unavailing.
 

 II.
 
 The 9019 Order’s Nonconformity with “Exhibit J” Did Not Affect Its Finality .
 

 Ades-Berg argues that, because the 9019 Order does not conform to the
 
 *161
 
 stipulated judgment, it is not a final order. The stipulated judgment, “Exhibit J” to the Agreement, is a three-page document, styled a “Final Order and Judgment” that includes, in relevant part, three specific findings: (i) “Notice of the hearing on the [Agreement] is approved as reasonable and sufficient”; (ii) “The Settling Defendants have not conceded liability, fault or wrongdoing of any kind and (iii) “Amounts to be paid on behalf of the Settling Defendants under the [Agreement] ... are property of the Estate.” The 9019 Order entered by the Bankruptcy Court, on the other hand, is a fifteen-page document, which includes a procedural background, jurisdictional statement, background, and roughly eight-page discussion, ending in a brief conclusion. The Northern District Court found, and we agree, that the 9019 Order, as entered, did not fully conform to “Exhibit J” of the Agreement as required by the Agreement, but that this did not affect the Order’s finality.
 

 With regard to the form of judgment, Ades-Berg notes that the 9019 Order was not “styled as a judgment.” They contend that if the judgement were so styled, it would have given them “notice that an additional paper would not be forthcoming and the time to appeal had, in the Bankruptcy Court’s view, begun to run.” Accordingly, Ades-Berg asserts that “it would be unfair to conclude that the [9019 Order] was final within the meaning of 28 U.S.C. § 158(a),” citing
 
 In re Smith Corset Shops, Inc.,
 
 696 F.2d 971 (1st Cir.1982). However,
 
 Smith Corset Shops
 
 deals only with the requirement that a
 
 final judgment
 
 be set forth in a separate document.
 
 See Smith Corset Shops,
 
 696 F.2d at 975; Fed. R. Bankr.P. 9021;
 
 see also Bogaerts v. Shapiro (In re Litas Intern., Inc.),
 
 316 F.3d 113, 117 (2d Cir.2003). In this case we are dealing with a final order as opposed to a final judgment, and no separate document is necessary to effect its finality. As the Northern District Court found, in determining that “the [Agreement] is fair and reasonable and in the best interest of the Debtors’ Estates” and authorizing the Trustee “to enter into the [Agreement],” the Bankruptcy Court “clearly intended to provide to [the Trustee] the [0]rder which the [Agreement] required it to obtain.” In furtherance of that intention, the Bankruptcy Court actually provided an Order that,
 
 on
 
 its face, meets the requirements of finality by bringing to an end the adversary litigation.
 

 Ades-Berg asserts that, the Bankruptcy Court’s intentions notwithstanding, the 9019 Order did not “dispose of’ the relevant dispute because there were still three findings required by the stipulated form of judgement to be made and statements of those findings — that notice of the Agreement was proper, that the Settling Defendants were not conceding liability, and that the amounts paid were the property of the Estate- — were not included in the 9019 Order. But the omission of such statements has no bearing on the finality of the Bankruptcy Court’s Order, which plainly authorized the Trustee to enter into the Agreement. As to the adequacy of the notice, the District Court properly determined that the issue of adequacy may be a valid ground on which to challenge the provisions of the 9019 Order, but it is wholly irrelevant to the finality of that Order. ’ As to the other omissions claimed by Ades-Berg, the Agreement itself sets out that the Settling Defendants were not conceding liability and that the amounts paid were the property of the Estate. Nothing in the 9019 Order amended these stipulated terms, and no further statement was necessary to effectuate them. Moreover, had the 9019 Order “materially modi-fie[d] the terms and conditions of the [Agreement], the [Agreement] provided
 
 *162
 
 that ‘any Settling Party could ‘terminate’ ” the Agreement. Again, the Order did not modify the terms of the Agreement in any way, and no Settling Party has sought to terminate the Agreement for any reason.
 

 In view of the foregoing, we hold that, in this case, nonconformity of the 9019 Order with the stipulated form of judgment did not affect the finality of the 9019 Order, which is final on its face.
 

 III.
 
 Approval Required by the Southern District Court Did Not Affect the 9019 Order’s Finality
 

 The Northern District Court determined that the 9019 Order was final notwithstanding the required approval and entry of final judgment in the Southern District Court because “[Ades-Berg] was no longer a party in the Southern District Court proceeding” and therefore “could not argue against the [Agreement] in that court nor could it appeal that court’s final judgment. Therefore, once the Bankruptcy Court issued its 9019 Order ... [Ades-Berg’s] only opportunity to object to the [Agreement] was by appealing from or seeking reconsideration of that order.” The District Court appears to have confused Ades-Berg’s counter-claim against the Trustee in the Southern District Court, which had indeed long since been dismissed, with Ades-Berg’s membership in the Settlement Class, by which Ades-Berg could have, and in this case, did, object to the Agreement in the Southern District Court. On appeal to this Court, the Trustee does not urge us to affirm on this ground, nor do we consider it. Instead, the Trustee asserts that the approval of the Bankruptcy Court and the approval of the Southern District Court were each “distinct” and that each approval “was, itself, a final order.” We agree that the entry of the 9019 Order constituted a final approval separate and distinct from the approval order issued by the Southern District Court.
 

 The Agreement encompassed settlements between Sphere Drake and related individuals and entities (the “Settling Defendants”) and the “Settlement Class,” including Ades-Berg, and the Trustee and others, affecting, claims in a number of courts. The Bankruptcy Court’s 9019 Order authorized the Trustee to settle
 
 his
 
 claims against Sphere Drake on behalf of the Debtors’ Estates. This approval was effective only as to those claims belonging to the Debtors’ Estates — it had no bearing on the claims of the other members of the Settlement Class. The overall Agreement required the approval of the Southern District Court, which was later received, but that approval did not affect the authorization of the Trustee to enter into the Agreement. While it is true that the Agreement was not
 
 effective
 
 until each court approved it — indeed the approvals of the United States Bankruptcy Court for the District of New Jersey and the Supreme Court of Bermuda were also required to effectuate the overall Agreement — -this does not alter the fact that a “discrete dispute” was resolved when the 9019 Order was entered authorizing the Trustee to enter into the Agreement.
 
 Compare
 
 Fed. R. Bankr.P. 9019(b) (“After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and
 
 authorize the trustee
 
 to compromise or settle controversies within such class or classes .without further hearing or notice.” (emphasis added)),
 
 with
 
 Fed.R.Civ.P. 23(e)(1)(C) (“The court may approve a settlement, voluntary dismissal, or compromise that would
 
 bind class members
 
 only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.” (emphasis added)). After that Order was entered, Ades-Berg did not have another opportunity to assert objections to the
 
 *163
 
 Agreement
 
 in the Bankruptcy Court;
 
 therefore, the Order was “final.” The finality of the orders entered by other courts in regard to approval of the overall Agreement simply is not relevant to our inquiry here.
 

 Ades-Berg cites
 
 Drexel Burnham,
 
 960 F.2d at 290, for the proposition that finality of an order “depends on whether appellants will have another chance to assert their objections to the [settlement [ajgreement.” But that proposition was put forth in
 
 Drexel Burnham
 
 in a context different from the case at bar. There, the district court approved a settlement agreement that “conclusively resolv[ed]” certain securities litigation claims but left unresolved other portions of the settlement agreement. Some of the terms of that agreement were “conditioned upon confirmation” of the debtor’s reorganization plan by the bankruptcy court.
 
 Id.
 
 at 289 (citing
 
 In re Drexel Burnham Lambert Group, Inc.,
 
 130 B.R. 910, 926, 927 (S.D.N.Y.1991)). By resolving the securities litigation claims as it did, the district court had left certain parties unable to participate in the debt- or’s reorganization proceedings under 11 U.S.C. § 1126(f).
 
 Id.
 
 at 290. This Court determined that the
 
 district court’s order
 
 was final as to those parties who had, by virtue of the order approving the settlement, lost any further opportunity to object to the settlement agreement.
 
 Id. Drexel Burnham
 
 thus did not resolve the question of whether an order confirming a settlement agreement in a bankruptcy court is final despite the agreement’s requirement for approval by other courts.
 

 Ades-Berg refers to the order in
 
 Mid-Hudson Realty Corp. v. Duke & Benedict, Inc. (In re Duke & Benedict, Inc.),
 
 278 B.R. 334 (S.D.N.Y.2002), as an example of a order that is not final when a future action, in that case a municipal planning board determination,- “could moot appel-lee’s damage claim.” In
 
 Duke & Benedict,
 
 parties to an adversary proceeding in bankruptcy court filed cross-motions for summary judgment on the issue of breach of a contract.
 
 Id.
 
 at 340. Appellees sought damages and injunctive relief; appellants sought a declaration that they were entitled to convey the at-issue property.
 
 Id.
 
 The bankruptcy court did not grant summary judgment “but used the opportunity to issue a Declaratory Judgment setting forth the rights and obligations of the parties under the [contract].”
 
 Id.
 
 The district court noted that the bankruptcy court had “deferred decision” on the issues of appellees’ damages and injunctive relief claims and appellants’ cross motion for summary judgment, “and chose instead to issue a narrow Declaratory Judgment on the question of ‘the rights and the obligations of [the][a]ffeeted parties [] under the modification agreement
 
 with regard to density.’ ” Id.
 
 at 342 (emphasis and selected alterations in original).
 

 The bankruptcy court “explicitly reserved decision on issues presented by the parties in their summary judgment motions. With respect to appellees’ breach of contract claims, [the bankruptcy court] explained that those issues were ‘really not before me today’ and that consideration of the claims would be ‘premature.’ ”
 
 Id.
 
 (quoting the bankruptcy court’s hearing transcript). The bankruptcy court also noted that “should the Planning Board impose unduly burdensome conditions on appellants, such as ... conveyance of the ‘entirety of title to the golf course property to someone else,’ it would become an issue for future litigation.”
 
 Id.
 
 (quoting the bankruptcy court’s hearing transcript). Thus, the bankruptcy court essentially held in abeyance the motions for summary judgment, as “many issues in the underlying adversary proceeding [were] contingent upon future action of the Planning Board and [could] be revisited once the
 
 *164
 
 Planning Board [had] made a final decision.”
 
 Id.
 
 at 343.
 
 Duke & Benedict
 
 gives no useful guidance here because the lack of finality in that case was apparent.
 

 Ades-Berg also relies on the language of
 
 Bogaerts v. Shapiro (In re Litas Intern., Inc.),
 
 316 F.3d 113, 117 (2d Cir.2003), for the proposition that “[w]hen the efficacy of a Bankruptcy Court order is subject to conditions subsequent, it does not become final until those conditions have occurred or the specified time for their satisfaction has passed.” However,
 
 Litas
 
 holds only that, where a
 
 final judgment
 
 is not set forth in a separate document, as required by Fed. R. Bankr.R. 9021 and Fed. R.Civ.P. 58, the time to appeal that judgment does not begin to run against the appellant.
 
 Litas,
 
 316 F.3d at 116-17, 120. As previously noted, in this case we are dealing with a final order as opposed to a final judgment, and no separate document is necessary to effect its finality. In arguing against a finding of finality as to the Order under review, Ades-Berg also cites
 
 LTV Corp. v. Farragher (In re Chateaugay Corp.),
 
 838 F.2d 59, 62 (2d Cir.1988), for the proposition that an order is not final where further proceedings are contemplated and, “depending on the outcome,” of those proceedings an appeal from that order may be mooted. Ades-Berg ignores the procedural context of the language of
 
 Chateaugay.
 
 That case involved an appeal from a district court’s decision to “vacate a bankruptcy court’s order and remand the action to the bankruptcy court ... [for] further proceedings in the bankruptcy court to determine the rights of the parties,”
 
 Chateaugay Corp.,
 
 838 F.2d at 62, a decision that is clearly not “final” in any sense of the word. Thus, neither
 
 Litas
 
 nor
 
 Chateaugay
 
 is pertinent here.
 

 We recognize “the strong federal policy against piecemeal appeals,”
 
 Fugazy,
 
 982 F.2d at 775, but believe that our conclusion in this case does not contravene that policy. Once the Bankruptcy Court issued the 9019- Order there was simply nothing further to be done in the Bankruptcy Court, and the case was ripe for appeal despite the pending approvals of other courts. In a situation such as this, where various courts must all approve a settlement before it becomes effective, having finality of one court’s order turn on the actions of a different court, the rule advanced by Ades-Berg, is a recipe for confusion. Any inefficiencies resulting from separate appeals of other court approvals of a settlement are outweighed by the need for finality of bankruptcy court orders of approval. . This is so because even greater inefficiencies would be the consequence if a party could not seek review of an otherwise final bankruptcy court order approving a settlement until another court ruled, weeks, months, or even years later.
 

 CONCLUSION
 

 For the foregoing reasons, we hold that the Bankruptcy Court Order of May 22, 2003, was a “final order” and, therefore, that Ades-Berg’s ten-day window to file a notice of appeal began to run on that day. Accordingly, the judgment of the Northern District Court, determining that the notice of appeal was filed after the time allowed for taking an appeal expired, is affirmed.
 

 [1]
 

 . “Ades” and "Berg” refer to two different groups of individual investors involved in the underlying bankruptcy proceedings. For ease of reference, this opinion will refer to those investor groups collectively as "Ades-Berg” without distinguishing between the two groups.
 

 [2]
 

 .
 
 A “Ponzi” or "Pyramid” Scheme is a fraudulent investment scheme in which money contributed by later investors is used to pay artificially high dividends to the original investors, creating an illusion of profitability, thus attracting new investors.
 
 See Black’s Law Dictionary
 
 1198 (8th ed.2004).