07-3464-bk
In Re: Ades and Berg Group Investors v.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

————

August Term, 2008

(Argued: November 24, 2008          Decided: December 16, 2008)

Docket No. 07-3464-bk

————

IN RE: ADES AND BERG GROUP INVESTORS

————

ADES AND BERG GROUP INVESTORS,

*Appellant*,

– v. –

RICHARD C. BREEDEN, CHAPTER 11 TRUSTEE OF BENNETT FUNDING GROUP, INC.,
COMMITTEE OF UNSECURED CREDITORS,

*Appellees*.

————

Before: WINTER, WALKER, and CALABRESI, *Circuit Judges*.

Appellant asserts that the District Court erred in affirming the Bankruptcy Court's grant of judgment on the pleadings dismissing Appellant's counterclaim of a constructive trust over proceeds from settlement of, *inter alia*, reinsurance claims for which Appellant maintains its members were the intended beneficiaries. Appellant contends that the Supreme Court's decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199 (2007), undermines Circuit precedents concerning constructive trusts in the context of bankruptcy. The judgment of the District Court is AFFIRMED.

WILLIAM F. COSTIGAN, Costigan & Company, P.C.,
New York, N.Y., *for Appellant*.

WILLIAM T. RUSSELL (Michelle B. Cherande & Carlos
A. Lopez, *on the brief*), Simpson Thacher & Bartlett LLP,
New York, N.Y., *for Appellees*.

————

PER CURIAM:

Ades and Berg Group Investors ("Ades-Berg")[1] appeals from the judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) dismissing on the pleadings its counterclaim for a constructive trust over proceeds from settlement of, *inter alia*, reinsurance claims of which Ades-Berg asserts its members were the intended beneficiaries. Relying on the Supreme Court's decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199 (2007), Ades-Berg contends that the District Court erred in applying a contracted standard for the equitable remedy of a constructive trust in the context of bankruptcy. Ades-Berg further argues that it has alleged sufficient facts to support, at this stage of litigation, a finding of unjust enrichment and entitlement to a constructive trust. In the alternative, Ades-Berg requests that, in the event that its counterclaim is found to be deficient in any respect, it be permitted to replead. For the reasons that follow, we conclude that *Travelers* does not undermine Circuit precedents, and that Ades-Berg's counterclaim for a constructive trust was properly dismissed for reasons that repleading cannot cure.

**BACKGROUND**

This action arises out of the bankruptcy filing of the Bennett Funding Group, Inc. and its related companies (collectively the "Bennett Group").[2] On February 24, 1997, appellee Richard

---

[1] "Ades" and "Berg" refer to two different groups of individual investors involved in the underlying bankruptcy proceedings. For ease of reference, we refer to those investor groups collectively as "Ades-Berg."

[2] The relevant facts set forth herein are drawn largely from this Court's previous decisions in this matter, as well as from the opinion by the Northern District Court. *See Ades-Berg Investors v. Breeden* (*In re Bennett Funding Group, Inc.*), 439 F.3d 155 (2d Cir. 2006); *Breeden v. Ades Investor Group* (*In re Bennett Funding Group, Inc.*), 60 Fed. App'x 863 (2d Cir. 2003); *Ades & Berg Group Investors v. Breeden* (*In re Bennett Funding Group, Inc.*), No. 6:06-CV-1390, 2007 U.S. Dist. LEXIS 49464 (N.D.N.Y. Jul. 9, 2007). These decisions also provide a more detailed account of the procedural and factual background of this adversary proceeding and the related bankruptcy case.

C. Breeden, the Chapter 11 Trustee for the Bennett Group, (the "Trustee") brought an adversary complaint against Sphere Drake Insurance PLC and related companies (collectively "Sphere Drake") in the United States Bankruptcy Court for the Northern District of New York ("Bankruptcy Court"). The Trustee's complaint sought recovery of proceeds due under a reinsurance policy issued to a Bennett Group company and asserted a variety of tort claims for aiding and abetting fraud and breach of fiduciary duty. The complaint also sought a declaration that the Trustee, and not the Bennett Group investors, was the sole and rightful recipient of any policy proceeds. Ades-Berg counterclaimed against the Trustee, seeking the imposition of a constructive trust over policy proceeds, and cross-claimed against Sphere Drake, alleging a contract cause of action.

The United States District Court for the Northern District of New York ("Northern District Court") subsequently transferred this action to the United States District Court for the Southern District of New York ("Southern District Court") for consolidation with an ongoing class action instituted by Bennett Group investors. The Southern District Court, in turn, dismissed Ades-Berg's cross-claim against Sphere Drake for lack of standing, and dismissed Ades-Berg's counterclaim against the Trustee without prejudice and subject to renewal in the Bankruptcy Court. *See Breeden v. Sphere Drake Ins., PLC* (*In re Bennett Funding Group, Inc.*), 270 B.R. 126, 127 (S.D.N.Y. 2001), *aff'd sub nom.*, *Breeden v. Ades Investor Group* (*In re Bennett Funding Group, Inc.*), 60 Fed. App'x 863 (2d Cir. 2003). In affirming dismissal of Ades-Berg's cross- and counter-claims, this Court recognized that the Ades-Berg defendants "lack standing under the Sphere Drake policy, because a reinsurance contract operates solely between the reinsurer and the ceding company [the insurer]; it confers no rights on the insured." *Breeden v. Ades Investor Group* (*In re Bennett Funding Group, Inc.*), 60 Fed. App'x 863, 865

(2d Cir. 2003). Having dismissed Ades-Berg's claims, the Southern District Court transferred the Trustee's declaratory judgment action back to the Northern District Court, which referred that action to the Bankruptcy Court.

In December 2002, the Trustee, Sphere Drake, and other interested parties and classes involved in a variety of cases in various courts, finalized a settlement. The settlement agreement required Sphere Drake and related entities to pay approximately $27.5 million for a release of all claims asserted by the Trustee, as well as claims asserted by the class action plaintiffs. The Southern District Court approved the Settlement by Final Order and Judgment on June 5, 2003, terminated the class action lawsuit, and remanded to the Bankruptcy Court for a distribution of settlement proceeds. Ades-Berg's members were part of the settling class.

In March 2003, the Trustee filed a motion in Bankruptcy Court, pursuant to Fed. R. Bankr. P. 9019, seeking authorization to consummate the Settlement. Ades-Berg timely objected to the motion. On May 22, 2003, the Bankruptcy Court, though noting Ades-Berg's objection, authorized the Trustee to consummate the Settlement Agreement. Ades-Berg thereafter filed a motion seeking to alter or amend the Bankruptcy Court's order approving the settlement, which the Bankruptcy Court found untimely. The Northern District Court and this Court affirmed the Bankruptcy Court's decision. *See Ades-Berg Investors v. Breeden* (*In re Bennett Funding Group, Inc.*), 439 F.3d 155 (2d Cir. 2006).

On April 12, 2004, the Bankruptcy Court entered a separate order directing the allocation of the proceeds derived from the settlement with Sphere Drake. A portion of the proceeds was allocated to creditors with Sphere Drake-related investments, while the remainder was to be distributed to the general unsecured creditors on a pro rata basis. The Bankruptcy Court concluded that this would be the most equitable outcome, given the various interests at play. The

Bankruptcy Court did note, however, that this allocation did not dispose of Ades-Berg's constructive trust counterclaim and directed the Trustee not to distribute the Settlement proceeds until that counterclaim had been adjudicated. Ades-Berg filed a notice of appeal from the allocation order, but the appeal was never perfected. Accordingly, the Northern District Court dismissed the appeal.

This brings us to the present litigation. Ades-Berg filed a Renewal of Counterclaim with the Bankruptcy Court on June 25, 2003. Ades-Berg again sought a judgment declaring that the proceeds of the Sphere Drake reinsurance policy were not property of the Debtors' estate and directing the Trustee, as trustee of a constructive trust, to pay Ades-Berg the amount of any proceeds received from Sphere Drake. On June 5, 2006, the Trustee filed a motion for judgment on the pleadings to dismiss Ades-Berg's constructive trust counterclaim. The Bankruptcy Court granted the Trustee's motion on October 23, 2006, and ordered the Trustee to disburse the settlement proceeds. In so doing, the Bankruptcy Court acknowledged that "bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." (quoting *Superintendent of Ins. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 217 (2d Cir. 2004)). Looking to New York law, the Bankruptcy Court concluded that Ades-Berg could not satisfy the element of unjust enrichment, as "[t]here is nothing inequitable or unconscionable" in allowing the Trustee to act "in accordance with the Bankruptcy Code in marshaling and preserving estate assets."

Ades-Berg appealed this ruling, and, on July 9, 2007, the Northern District Court affirmed the decision of the Bankruptcy Court and dismissed the appeal. *See Ades & Berg Group Investors v. Breeden* (*In re Bennett Funding Group, Inc.*), No. 6:06-CV-1390, 2007 U.S. Dist. LEXIS 49464 (N.D.N.Y. July 9, 2007). The Northern District Court endorsed the Bankruptcy

Court's approach to constructive trusts in bankruptcy, and described this Court's *First Central* decision as "unquestioned, binding precedent." *Id.* at \*9. The Northern District Court also agreed with the Bankruptcy Court that Ades-Berg could not show unjust enrichment. *Id.* at \*9-16. The court concluded that there was no "substantial equitable reason to impose a constructive trust on the settlement proceeds." *Id.* at \*16.[3] Ades-Berg timely filed this appeal.

**DISCUSSION**

Ades-Berg's primary argument on appeal presents a purely legal question for this Court:[4] whether the Supreme Court's recent decision in *Travelers*, undermines our instruction that courts should "act very cautiously" in applying constructive trust law in the context of bankruptcy. *First Cent.*, 377 F.3d at 217 (quotation marks omitted). Ades-Berg contends that the Northern District Court erred in describing *First Central* as "unquestioned, binding precedent" and in evaluating Ades-Berg's constructive trust counterclaim accordingly.

In *First Central*, this Court considered the impact of the bankruptcy context on the equitable doctrine of constructive trust. In that case, two corporations executed a tax allocation agreement for the consolidated filing of tax returns and the sharing of any resulting tax refunds. When one filed for bankruptcy, its Trustee applied to the IRS for a refund of taxes paid during

---

[3] In its papers before the Bankruptcy and Northern District Courts, Ades-Berg requested permission to replead if its counterclaims were in any way deficient. Neither court explicitly addressed this request.

[4] "In an appeal from a district court's review of a bankruptcy court ruling, our review of the bankruptcy court is independent and plenary. We accept its factual findings unless clearly erroneous, but review its conclusions of law de novo." *In re Bell*, 225 F.3d 203, 209 (2d Cir. 2000) (citation omitted). A motion to dismiss under Rule 12(c) is governed by the same standard as a motion under Rule 12(b)(6). *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Accordingly, we accept all allegations in the complaint as true, draw all inferences in favor of the plaintiff, and affirm only if the plaintiff fails to provide factual allegations sufficient "to raise a right to relief above the speculative level." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 107 (2d Cir. 2008).

two previous years in which the other had paid the group's entire tax liability. Rather than turning over the refund—as required by the agreement—the Trustee kept the refund, claiming it belonged to the bankruptcy estate. In an adversary proceeding that followed, this Court concluded that, as a matter of law, a constructive trust was not warranted under New York law. *Id.* at 218.

In reaching this conclusion, this Court observed,

> The chief purposes of the bankruptcy laws are to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period, to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and to protect the creditors from one another.

*Id.* at 217 (internal citations and quotation marks omitted). A constructive trust creates "a separate allocation mechanism outside the scope of the bankruptcy system," and so can "wreak . . . havoc with the priority system ordained by the Bankruptcy Code." *Id.* (internal quotation marks omitted). More pointedly, this Court explained,

> [A]lthough we do not disturb the general rule that constructive trusts must be determined under state law, we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the "equities of bankruptcy are not the equities of the common law."

*Id.* at 218 (quoting *XL/Datacamp., Inc. V. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994)). Significantly, the Court noted that a bankruptcy trustee "marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns." *Id.* While the estate may be enriched by the retention of funds due to others under a contract, the estate is not unjustly enriched in this context. *Id.*

In its 2007 decision in *Travelers*, the Supreme Court reaffirmed the "basic federal rule" that state law governs the substance of claims in bankruptcy, as well as the notion that "'[u]nless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" *Travelers*, 127 S. Ct. at 1205 (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). In so doing, the Court overruled the Ninth Circuit's so-called *Fobian* rule, which categorically barred creditors from recovering, as part of their unsecured claim, attorney's fees authorized by a prepetition contract and incurred in postpetition litigation of bankruptcy issues. This bar prohibited recovery of such fees "even where the contractual allocation of attorney's fees would be enforceable under applicable nonbankruptcy law . . . ." *Id.* at 1202. Finding no textual support for the *Fobian* rule in the Bankruptcy Code, the Supreme Court overruled it because "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Id.* at 1206.

Ades-Berg contends that, after *Travelers*, it is erroneous to evaluate constructive trust claims differently in the bankruptcy context than in the nonbankruptcy context because doing so undermines a system explicitly premised on applicable nonbankruptcy law to define property interests. But Ades-Berg misreads *Travelers*, as well as our prior precedent in *First Central*, in making this argument. *First Central* expressly acknowledged that "we do not disturb the general rule that constructive trusts must be determined under state law . . . ." *First Cent.*, 377 F.3d at 218. *First Central* merely instructs courts to be mindful, in applying state constructive trust law, that the "equities of bankruptcy are not the equities of the common law." *Id.* (quotation marks omitted). Recognizing different equities in different contexts is not an impermissible

transformation of the substantive law. It is simply a recognition that an equitable remedy is more or less appropriate when different interests are in play. Context-sensitivity is part and parcel of equity under New York law as much as it is under bankruptcy law.

Moreover, *First Central* grounded its bankruptcy-sensitive analysis of New York unjust enrichment law in the purposes of the Bankruptcy Code, giving its reasoning the tie to the Code that was utterly lacking in the *Fobian* rule rejected by *Travelers*. *See id.* at 217. The *First Central* Court reasoned that there was no New York unjust enrichment where the Trustee's conduct was "fully consistent with—and indeed, required by—the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets." *Id.* This was not an abandonment of state substantive law; it was a careful adherence to that law in light of the special equities of bankruptcy. The Northern District Court and Bankruptcy Court below, therefore, did not run afoul of *Travelers* in following *First Central* and describing *First Central* as "unquestioned, binding precedent." *Ades & Berg Group Investors*, No. 6:06-CV-1390, 2007 U.S. Dist. LEXIS 49464, at *9; *see also Cadle Co. V. Mangan* (*In re Flanagan*), 503 F.3d 171 (2d Cir. 2007) (following *First Central* after *Travelers*, but not discussing *Travelers*).

Having resolved this question of applicable precedent, we may address the merits of Ades-Berg's constructive trust counterclaim in summary fashion. New York law requires four elements to prove a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). The parties do not dispute that the courts below properly found that the first three elements are present here. The reasoning of *First Central* is dispositive as to the fourth, unjust enrichment. The New York Court of Appeals has explained that "equity and good conscience" are "the fundamental requirement[s] for imposition of a

constructive trust." *In re N.Y. Agency of Bank of Commerce & Credit Int'l S.A.*, 90 N.Y.2d 410, 424 (1997). Consistent with our reasoning in *First Central*, retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust. First Cent., 377 F.3d at 218. Similarly, the New York Court of Appeals has recognized that "there is no inequity in treating [Ades-Berg] in the same manner as any other depositor/creditor who was unfortunate enough to have placed its money" with the Bennett Group. *In re N.Y. Agency*, 90 N.Y.2d at 424. Equity and good conscience do not demand the creation of a constructive trust in this instance, and, accordingly, we decline to impose one.

Finally, we decline to permit Ades-Berg to replead because the flaws in its counterclaim cannot be cured by repleading. *See Joblove v. Barr Labs., Inc.* (*In re Tamoxifen Citrate Antitrust Litig.*), 466 F.3d 187, 220 (2d Cir. 2006) ("[W]here amendment would be futile, denial of leave to amend is proper.").

## CONCLUSION

For the foregoing reasons, the judgment of the Northern District Court is **AFFIRMED**.